J-S54006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AKZAVIER ALI CARRINGTON | |
| Appellant | No. 397 MDA 2014 |

Appeal from the Judgment of Sentence January 31, 2014
In the Court of Common Pleas of Mifflin County
Criminal Division at No(s): CP-44-CR-0000168-2013

BEFORE:  LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.                    **FILED NOVEMBER 18, 2014**

Akzavier Ali Carrington appeals from the judgment of sentence imposed in the Court of Common Pleas of Mifflin County after a jury found him guilty of two counts each of robbery[1] and conspiracy,[2] and one count each of terroristic threats[3] and theft by unlawful taking, all relating to the robbery of a Sunoco gas station.[4]  Counsel has petitioned this Court to withdraw his representation of Carrington pursuant to ***Anders***, ***McClendon***

---

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii) and (a)(1)(v).

[2] 18 Pa.C.S.A. § 903; 18 Pa.C.S.A. § 3701(a)(1)(ii); 18 Pa.C.S.A. § 3921(a).

[3] 18 Pa.C.S.A. § 2706(a)(1).

[4] 18 Pa.C.S.A. § 3921(a).

and **Santiago**.[5] Upon review, we find Carrington's sentence to be illegal and remand the case to the trial court for resentencing. Counsel's request to withdraw is denied.

On November 20, 2013, Carrington was convicted of the above crimes and, on January 31, 2014, he was sentenced to an aggregate term of five to ten years' imprisonment. Carrington did not file post-sentence motions and, on February 24, 2014, filed a notice of appeal. Counsel seeks to withdraw and has filed an **Anders** brief.

When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008). In order to withdraw pursuant to **Anders** and **McClendon**, counsel must: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support an appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a pro se brief to raise any additional points that the appellant deems worthy of review. **Commonwealth v. Hernandez**, 783 A.2d 784,

_____

[5] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981); and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

786 (Pa. Super. 2001). In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), the Pennsylvania Supreme Court held that, in order to withdraw under **Anders**, counsel must also state his reasons for concluding his client's appeal is frivolous.

Instantly, counsel's petition states that he has made an examination of the record and concluded the appeal is wholly frivolous. Counsel indicates that he supplied Carrington with a copy of the brief and a letter explaining Carrington's right to proceed *pro se*,[6] or with newly-retained counsel, and to raise any other issues he believes might have merit. Counsel also has submitted a brief in which he repeats his assertion that there are no non-frivolous issues to be raised. Accordingly, counsel has substantially complied with the procedural requirements for withdrawal. We now conduct our own review of the issues raised in the **Anders** brief.

Counsel addresses the following issues in his **Anders** brief:

1. Whether the trial court erred in denying Carrington's motion for change of venire or venue.

2. Whether the evidence was sufficient to sustain Carrington's convictions.

3. Whether the trial court abused its discretion in imposing a an aggregate sentence of five to ten years.

---

[6] Carrington has not submitted any additional or supplemental filings to this Court. Additionally, the Commonwealth has indicated that it will not be filing a brief in this matter.

- 3 -

Carrington first claims that the trial court erred in denying his motion for change of venue or venire. Pennsylvania Rule of Criminal Procedure 584 governs requests for changes of venue and provides as follows:

> (A) All motions for change of venue or for change of venire shall be made to the court in which the case is currently pending. Venue or venire may be changed by that court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending.

Pa.R.Crim.P. 584(A). A trial court's decision on motions for change of venue or venire rests within the sound discretion of the trial judge, whose ruling will not be disturbed on appeal absent an abuse of that discretion. *Commonwealth v. Brookins*, 10 A.3d 1251, 1258 (Pa. Super. 2010). "In reviewing the trial court's decision, our inquiry must focus upon whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-trial publicity." *Commonwealth v. Drumheller*, 808 A.2d 893, 902 (Pa. Super. 2002).

> A change in venue becomes necessary when the trial court concludes that a fair and impartial jury cannot be selected in the county in which the crime occurred. Normally, one who claims that he has been denied a fair trial because of pretrial publicity must show actual prejudice in the empanelling of the jury. In certain cases, however, pretrial publicity can be so pervasive or inflammatory that the defendant need not prove actual juror prejudice. Pretrial prejudice is presumed if: (1) the publicity is sensational, inflammatory, and slanted toward conviction rather than factual and objective; (2) the publicity reveals the defendant's prior criminal record, or if it refers to confessions, admissions or reenactments of the crime by the accused; and (3) the publicity is derived from police and prosecuting officer reports. Even where pre-trial prejudice is presumed, a change of venue or venire is not warranted unless the defendant also

- 4 -

shows that the pre-trial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated.

*Id.* (internal citations, brackets and quotation marks omitted).

Here, Carrington filed an omnibus pre-trial motion in which he requested a change of venue or venire due to allegedly "extensive, inflammatory, sensational and highly inculpatory publicity about this incident and the arrest of [Carrington.]"  Omnibus Pre-Trial Motion, 7/26/13, at ¶ 5.  The court held a hearing on Carrington's motion on October 9, 2013, at which a writer/newsreader from a local radio station testified that she recalled broadcasting news of a police press release regarding the robbery approximately ten times over two stations (one FM and one AM).  N.T. Pre-Trial Motions Hearing, 10/9/13, at 4.  Carrington also presented four articles about the robbery from the website of the Lewistown Sentinel.  Three of those articles were accompanied by a photograph of Carrington.  While counsel conceded that none of the newspaper articles or other publicity surrounding the case was sensational, inflammatory or slanted, or referred to any prior record or confession, he claimed that Carrington was the sole alleged perpetrator whose name and photograph were "highlighted" in the articles.  *Id.* at 13.

Following the hearing, the trial court held Carrington's motion in abeyance pending jury selection, at which time counsel could question the venirepersons in an attempt to determine their actual knowledge of any

pretrial publicity. During *voir dire*, Carrington's counsel informed the members of the panel that the case involved the Sunoco robbery and asked if any of them recalled reading about the incident, to which eleven of them responded in the affirmative. However, when asked if any of them had formed an opinion as to what had occurred, none said they had.

Based upon the foregoing, we cannot conclude that the pre-trial publicity surrounding Carrington's case was so "extensive, sustained, and pervasive that the community must be deemed to have been saturated with it," **Drumheller**, **supra**, or that, as a result, the jury pool was prejudiced over one year after the incident occurred. Rather, those jurors who recalled reading or hearing about the robbery all indicated that they had not formed an opinion regarding Carrington's guilt. Accordingly, the trial court did not abuse its discretion by denying Carrington's motion for change of venue or venire.

Carrington next challenges the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. **Commonwealth v. McDonough**, 96 A.3d 1067, 1068-69 (Pa. Super. 2014).

Here, Carrington was convicted of robbery – threat of immediate serious injury,[7] robbery – by force,[8] terroristic threats,[9] theft by unlawful taking[10] and conspiracy[11] – robbery and theft by unlawful taking.  At trial,

---

[7] Robbery – threat of immediate serious bodily injury is defined as follows:

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> . . .
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).  "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

[8] A person commits robbery by force if, "in the course of committing a theft, he . . . physically takes or removes property from the person of another by force however slight[.]"  18 Pa.C.S.A. § 3701(a)(1)(v).

[9] A person commits the crime of terroristic threats if the he "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]"  18 Pa.C.S.A. § 2706(a)(1).

[10] A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.  18 Pa.C.S.A. § 3921(a).

[11] Criminal conspiracy is defined as follows:

> (a)  *Definition of conspiracy*.  --A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

*(Footnote Continued Next Page)*

the Commonwealth presented the testimony of Amanda Hocker, the clerk at the Sunoco station at the time of the robbery. Hocker testified that, on the night in question, two men dressed in black clothing, covering both their bodies and faces, entered the store while she was mopping the floor. One of the men went to the rear of the store, while the other approached the counter with what appeared to be a gun. The man with the gun called Hocker a "bitch" and demanded that she put money from the register in a bag. Hocker testified that, after she gave the man the money, he led her to the back of the store and told her to get down on the floor. He also grabbed her arm and pulled her down to the floor. Hocker testified that she was afraid that she would be shot or killed. The men finally fled the store with the bag of money. The store manager later testified that the men had stolen $72.00. Hocker was unable to identify the men, other than to say that the gunman had brown eyes.

Andrew Hoy also testified at trial. He testified that, approximately a week prior to the robbery, Carrington proposed that Hoy commit a robbery

_(Footnote Continued)_ ———————

   (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

   (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

with him. Hoy agreed. On the day of the robbery, Carrington, Hoy and a third individual named Charles Zeiders met at Carrington's home. Carrington and Hoy changed into black clothing, putting shirts over their faces as masks. A week earlier, they had stolen a BB gun from Wal-Mart, which Carrington carried as they left the house. The three walked to a creek near the Sunoco, at which point Carrington and Hoy "put the mask on over our faces – our shirt over our face, our mask, put our hoodies up, and Charles went up and rode around the Sunoco to see if anybody was there." N.T. Trial, 11/20/13, at 42.

Hoy testified that he and Carrington entered the store. Hoy went to the rear of the store to try to locate the security tapes, while Carrington went to the counter with the BB gun and ordered Hocker to place the money from the register in the bag. Hoy witnessed Carrington take the money and put it in the bag and then observed him take Hocker to the back of the store and push her to the ground. Hoy stated that they then left the Sunoco and returned to the creek, into which they threw their sweats.

This evidence, when viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, **McDonough**, **supra**, establishes that Carrington committed the crimes of which he was convicted.

Finally, Carrington claims that his sentence was excessive. This claim challenges the discretionary aspects of sentencing, which are not reviewable as of right. Rather, an appellant is required to "set forth in his brief a

concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). This statement must:

> specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates. Additionally, the statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm. If the statement meets these requirements, we can decide whether a substantial question exists.

***Commonwealth v. Kiesel***, 854 A.2d 530, 532 (Pa. Super. 2004). Here, counsel failed to include a Rule 2119(f) statement in his brief. Nor did counsel set forth any argument, even in neutral form. Nonetheless, for the reasons that follow, we grant relief to Carrington and remand his case for resentencing.

Carrington was sentenced to a mandatory minimum of five years imprisonment pursuant to 42 Pa.C.S.A. § 9712, which provides as follows:

> (a)  Mandatory sentence. – Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.
>
> (b)  Proof at sentencing. –Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the

> Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. **The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable**.

42 Pa.C.S.A. § 9712 (emphasis added).

In **Alleyne v. United States**, 133 S.Ct. 2151 (2013), the United States Supreme Court held that any facts leading to an increase in a sentencing floor are elements of the crime and must be presented to the fact-finder and proven beyond a reasonable doubt. Thus, section 9712(b), as written, was rendered constitutionally infirm because it allowed the sentencing court to determine whether the mandatory minimum applies, and required that the Commonwealth prove the section's applicability by only a preponderance of the evidence.

At trial, in an attempt to comply with **Alleyne**, the court had the jury decide, beyond a reasonable doubt, whether Carrington possessed a firearm and whether that fact placed Hocker in reasonable fear of death or serious bodily injury. The jury found in the affirmative, and Carrington was sentenced accordingly.

Recently, in **Commonwealth v. Valentine**, 2014 Pa. Super. 220 (Pa. Super. filed October 3, 2014), this Court applied **Alleyne** to a factual scenario identical in all relevant respects to the matter *sub judice*. There, the defendant was sentenced to a mandatory minimum pursuant to section

9712 after the jury made a specific factual finding, beyond a reasonable doubt, that he had possessed a firearm that placed the victim in reasonable fear of death or serious bodily injury. On appeal, Valentine argued that, despite the fact that the jury made the section 9712 determination beyond a reasonable doubt, the unconstitutional portion of section 9712 – subsection (b) – was not severable from the remainder, rendering the entire statute unconstitutional. This Court agreed. In finding the statute non-severable, we quoted this Court's earlier decision in **Commonwealth v. Newman**, 2014 Pa. Super. LEXIS 2871, *35 (Pa. Super. 2014), interpreting section 9712.1 (Sentences for certain drug offenses committed with firearms):

> Subsections (a) and (c) of [s]ection 9712.1 are essentially and inseparably connected. Following **Alleyne**, [s]ubsection (a) must be regarded as the elements of the aggravated crime of possessing a firearm while trafficking drugs. If [s]ubsection (a) is the predicate arm of [s]ection 9712.1, then [s]ubsection (c) is the "enforcement" arm. Without [s]ubsection (c), there is no mechanism in place to determine whether the predicate of [s]ubsection (a) has been met.

**Valentine**, **supra** at *21, quoting **Newman**, **supra** at *34-35.

We further concluded that, by presenting the firearm enhancement question to the jury, "the trial court performed an impermissible legislative function by creating a new procedure in an effort to impose the mandatory minimum sententence[] in compliance with **Alleyne**." **Id.** at *22. "[I]t is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**." **Id.**, quoting

- 12 -

*Commonwealth v. Newman*, 2014 Pa. Super. LEXIS 2871, *35 (Pa. Super. 2014). Accordingly, we concluded that the trial court lacked authority to allow the jury to determine the application of section 9712 and vacated Valentine's sentence, directing the court to re-impose sentence "without consideration of any mandatory minimum sentence[.]" *Id.* at *23.

Likewise, here, we are constrained to vacate Carrington's sentence and remand his case to the trial court for resentencing in accordance herewith. In re-imposing sentence, the court shall not apply the mandatory minimum sentencing provisions of section 9712.

Moreover, because we have found that Carrington has a meritorious appellate claim, we must deny counsel's request to withdraw.

Judgment of sentence vacated. Case remanded for resentencing in accordance with the dictates of this memorandum. Jurisdiction relinquished. Motion to withdraw denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2014