IN THE

# SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT, MARCH TERM, 1817.  1817.

The Farmers' & Mechanics' Bank *against* SMITH.

DEMURRER.

*Philadelphia.*

*Monday,*
March 31.

THE defendant was sued as indorser of a promissory note, which fell due in *August*, 1811. He pleaded in bar a certificate of discharge, under the act of assembly of this state, passed on the 13th *March*, 1812, entitled, " An act for " the relief of insolvent debtors, residing in the city and " county of *Philadelphia*, and their creditors." To this plea the plaintiff demurred, assigning for cause of demurrer, 1st, that it was a law impairing contracts; 2d, that it was a bankrupt law, which the Congress of the *United States*, alone, can enact. The defendant joined in demurrer.

This law was confined in its operation to the city and county of *Philadelphia*. and was repealed at the ensuing session of the legislature. It provided for the appointment of commissioners; of curators to take charge of the petitioner's property; and eventually of assignees, to whom all the petitioner's property was to be assigned; and who were to distribute the same among the creditors. Certain acts of traders and others, authorised compulsory proceedings against them to ascertain their insolvency, and to enforce in that

*The act of 13th March, 1812, was constitutional. The states have power to pass bankrupt laws as long as Congress does not legislate on the subject. A state bankrupt law is not a law impairing the obligation of contracts, within the meaning of the constitutions of the United States and state of Pennsylvania.*

3 SR  63
210 ·  391

3 SR  63
215  ¹239

3 SR  63
j220  133

1817.

The Farmers'
and Mecha-
nics' Bank
*v.*
SMITH.

case a surrender of their property. On complying with the provisions of the act, a certificate was to be given to the insolvent which it was declared should discharge his person, and also should "be construed to discharge such insolvent "from all debts and demands due from him, or for which he "was liable at the date of such certificate, or contracted or "originating before that time."

*Wallace* and *Binney*, for the plaintiff.

The question is, whether the act of the 13th *March*, 1812, is not a violation of the constitution of the *United States*, and of the state of *Pennsylvania*.

1. It is a bankrupt law. It discharges not merely the person, but the debt itself. By the constitution of the *United States* this power is given to Congress. Art. 1. sect. 8. provides, that Congress shall have power to "establish uniform "laws on the subject of bankruptcies throughout the *United* "*States*." Congress have exclusive power in three cases; 1. When expressly given. 2. When the power is given in general to the *United States*, and the individual states are expressly prohibited from the exercise of it. 3. Where the power of the individual states is incompatible with that given to the *United States*. The two first are evident. Under the last, fall naturalisation laws and bankrupt laws; because the exercise of these powers by a state, would prevent uniformity throughout the *United States*. The constitution of the *United States* gives no power to the several states to act, until Congress makes a law on the subject; there is no such distinction suggested. *Federalist*, Vol. i. No. 32. p. 227. No. 42. p. 325. No. 41. p. 305. Vol. ii. No. 82. p. 264.

2. This law manifestly impairs contracts, and, therefore, violates the 10th sect. of the 1st art. of the constitution of the *United States*, which provides, that "no state shall pass any "law impairing the obligation of contracts;" and also, the provision of the 17th sect. of the 9th art. of the constitution of *Pennsylvania*, which declares, that "no *ex post facto* law, "nor any law impairing contracts shall be made." The *United States* are not prohibited from passing a law impairing contracts, because power is given to them to pass bankrupt laws. They cited the case of *Golder* v. *Prince*, decided in the Circuit Court of the *United States*, at *Philadelphia*, in *April*, 1814, by Judge WASHINGTON.

*Sergeant* and *Ingersoll*, for the defendant.

This law has been acted upon to a great extent, and has been acquiesced in by this Court in questions of bail, and others of frequent recurrence. If the law is now determined to be void, all that has been done under it is void: and the consequences would be pernicious in the extreme. It is a well settled principle of our Courts, that no law will be declared unconstitutional, unless in a very clear case. 6 *Cranch,* 128. The objections to this law will be considered as they are stated.

1. Is a bankrupt law made by a State, while there is no national bankrupt law in existence, void ? Practical construction on constitutional questions ought to have great weight; and several states, as for instance, *New York, Rhode Island,* and *Maryland,* have all passed bankrupt laws, while Congress had no such law. And this practical construction is right. All powers not delegated to the United States, or prohibited to the several states, are reserved to the latter, or to the people. Constitution of the *United States,* art. 9. sect. 10. 1 *Federalist,* No. 32. p. 201. Now the powers given to the *United States,* are exclusive only in two cases : 1. when expressly so given ; 2. where, from the nature of the case, they must be exclusive. In some cases where the constitution has given express powers to the *United States,* it has prohibited those powers to the states, for example, coining money, laying imposts on imports or exports, or engaging in war. Therefore, the principle is, that an affirmative power given to the *United States,* does not imply a negative to the states, unless the exercise of those powers by both, be incompatible ; and in such case, it is implied, that the states shall not exercise that power at the same time with the *United States.* Congress are not compelled to pass a bankrupt law if it is in their opinion inexpedient ; and if they do not, it is hard to see why the states may not. As soon, however, as they choose to do so, then the states are excluded. It is the opinion of KENT C. J. 9 *Johns.* 574. that all power remains in the states not given to the *United States* in express terms, or by necessary implication. The states may go on to exercise the power, till it comes practically in collision with the laws of the *United States.* In the present case there is no collision. Thus Congress has power to fix the standard of weights and measures, but they have never done it.

1817.    In the mean time the states do it.  Congress has power
"to provide for organising, arming, and disciplining the
"militia."  Yet the states exercise most of these powers,
and Congress never has thought proper to pass laws for or-
ganising and disciplining the militia.   On the subject of na-
turalisation, it is decided, that the states may exercise powers
not repugnant to the laws of Congress.  *Collet* v. *Collet.(a)*
In *United States* v. *Vilatto,(b)*  Judge IREDELL thinks the
power of naturalisation was exclusive in the *United States*,
as soon as it was exercised by Congress.   The act of Con-
gress of 1802, declares that foreigners shall be naturalised,
thus, and "not otherwise."

2. Is this law void, as impairing contracts?   It cannot be.
The construction contended for is too extensive.   It would
annul all acts of limitation, of insolvency, acts giving stay of
execution, and for divorce ; in a word, every law which va-
ries the situation of debtor and creditor.   In 6 *Cranch*, 144,
5. it seems thought by JOHNSON J. that the intent of the con-
stitution in this provision, was to guard individuals against
acts of state, passed in their own favour.   It is not easy to
define the extent or limits of this clause ; but its spirit can
never go to prohibit such laws, as, in sound legislation are
deemed proper for the common good.

*Reply.*  We agree, that a case should be clear, in which a
law is declared to be void.   If there be doubt, the law must
stand ; but where it is clear, the constitution of the *United
States* must be supported.  *Pennsylvania* never passed a law,
discharging the insolvent from his debts, till this act of 1812;
and this was limited in its sphere of operation, and but of
short duration.   It must be considered as a bankrupt law.
It is a close imitation of the  English bankrupt laws, except
that it is not confined to traders.   We contend that contracts
are impaired by it, and that the state has no power to pass a
bankrupt law.

1. What is impairing ?  It is diminishing the force . of the
obligation.   When a debt is discharged without payment, it is
certainly impaired.   Total dissolution, is impairing *a fortiori*.
The case is certainly within the words of the constitution.   If
these words are to be limited, it lies on the adverse party to-

The Farmers'
and Mech -
nics' Bank
v.
SMITH.

(a) 2 *Dall.* 294.                    (b) *Ib.* 370.

say how. It appears, too, to be one of the cases which the
framers of the constitution had in view; because, Congress
is expressly authorised to legislate on the subject, and was
not restricted, as the states were, from passing a law impair-
ing contracts. The reason why this restriction was not im-
posed on Congress, was, because the convention knew that a
bankrupt law did impair contracts. Judge JOHNSON's opinion
was in a case where he differed from a majority of the
Court, and he did not pretend to give any accurate meaning
to the words used in the constitution. But MARSHALL
C. J. declares, that the words are general, and apply to con-
tracts of every description. As to the cases of limitation
acts, insolvent and divorce laws, and laws for stay of
execution, they are not like the present. Acts of limitation,
or for stay of execution, do not destroy the remedy altoge-
ther; they are not in words, or spirit, impairing a contract.

2. It is true, the practical construction may have been against
us, though *we are not well informed of the acts of other*
states. The constitutional question arose before Judge
STORY, but was not decided; the case went off on another
point. *Gallison's Rep.* 371.

TILGHMAN C. J. I agree with the counsel for the plain-
tiff, in considering the act of assembly, on which the question
in this case arises, as a bankrupt act. Such, it certainly is,
in its nature, although confined in its operation, to a particu-
lar part of the state. It has the leading features of a bank-
rupt law; the discharge from all debts, in consideration of the
surrender of the property of the debtor; and it possesses the
details usually found in bankrupt laws, for carrying the main
design into effect. The validity of this law is contested, as
violating the constitution of the *United States* in two re-
spects; 1st, In assuming a power which has been *exclusively*
vested in the Congress of the *United States.* 2. In *impair-
ing the obligation of contracts,* contrary to the express prohi-
bition of the 10th sect. of the 1st art. of the constitution.

1. Congress has power, " to establish uniform laws on
" the subject of bankruptcies, throughout the *United States,*"
Constitution, art. 1. sect. 8. Hence it is contended, that no
state has power to pass a law on the subject of bankruptcy.
There would be great strength in this argument, if Congress
had exercised their power, by passing a bankrupt law; be-

1817.

The Farmers'
and Mecha-
nics' Bank
v.
SMITH.

cause then, the uniformity which they were authorised to es-
tablish, would be broken in upon, by the act of an individual
state.    But it is to be considered, whether the power of Con-
gress is *exclusive, even when they do not think proper to ex-
ercise it;* for thus the matter is at present circumstanced.
Antecedent to the adoption of the Federal constitution, the
power of the several states was supreme and unlimited.    It
follows, therefore, that all power, not transferred to the
*United States*, remains in the states and the people, accord-
ing to their several constitutions.   This would have been the
sound construction of the constitution, without amendment.
But the jealousy of those, who feared that the federal govern-
ment would absorb all the power of the states, caused it to
be expressly recognised in the 11th and 12th articles of amend-
ment.   Supposing, then, that there has been ceded to Con-
gress, the exclusive power to regulate the subject of bank-
ruptcy, whenever they shall think it expedient to exercise it,
is it to be inferred, that the states have debarred themselves
from all exercise of power on the same subject, when Con-
gress do not think it expedient to act? I can perceive no
just ground for the inference.   The exercise of this power
by the states, under such circumstances, could have no inter-
ference with the power delegated to Congress, and it would
present a situation of things, very ill suited to the commer-
cial habits of many of the states.   For, such are the hazards,
to which those who engage in trade and commerce, are un-
avoidably exposed, that, I believe, it has been found neces-
sary, in all commercial countries, to relieve the unfortunate
from the burthen of their debts, upon the surrender of all
their property.   There seem to be but three cases, in which
the several states have no power to legislate.   1. Where
they are expressly prohibited.   2. Where exclusive power
is expressly vested in the *United States.*   3. Where the pow-
er vested in the *United States* is, in its nature, exclusive.
The subject of bankruptcy does not fall within the first or
second of those cases.   And if it falls within the third, it is
only during those times in which Congress exercise their
power on the same subject.   The states are not to be divest-
ed of their power by inferences, unless the inferences be in-
evitable.   Now, that is not the case here.   On the contrary,
the power contended for, on behalf of the states, is in perfect
harmony with the power granted to Congress; a power to

1817.

The Farmers'
and Mecha-
nics' Bank
*v.*
SMITH.

legislate, on a *subject of necessity*, at a time when Congress do not think it expedient to act. I think the constitution has received a practical construction on this point, although I know that the weighty opinion of Judge WASHINGTON has lately been pronounced to the contrary, (*Golder* v. *Prince, April,* 1814, in the Circuit Court of the *United States,* at *Philadelphia.*) But to that opinion, is opposed the strong argument of the Supreme Court of *New York,* in *Livingston* v. *Van Ingen,* in which it was adopted as a principle, that in cases where power is affirmatively vested in Congress, and not expressly taken away from the states, they may go on to legislate, until their laws come in collision with the acts of Congress. By *practical construction,* however, I do not mean *judicial* decision, but practice sanctioned by general consent. In the same section of the constitution from which Congress derive their power to establish an uniform system on the subject of bankruptcies, they have also given to them the power of fixing the standard of weights and measures. This they have never done, but the states have regulated them at their pleasure, and I believe, without question. In the same section also, there is granted to Congress, the power to provide for organising, arming, and disciplining the militia ; and yet all the states have passed laws on those subjects, much to the public benefit, and in harmony with the acts of Congress. From all these considerations, although I will not say that a case admits of no doubt, in which men of great talents have doubted, yet I have no hesitation in giving it as my opinion, that the act of assembly in question is valid, unless it can be brought within the prohibition of the constitution, which relates to the impairing of the obligation of contracts.

2. It cannot be denied, that, taking the words, in their literal, and fullest extent, contracts are impaired by a bankrupt law. But conventions, intended to regulate the conduct of nations, are not to be construed as articles of agreement at common law. It is of little importance to the public, whether a tract of land belongs to *A,* or *B.* In deciding their titles, strict rules of construction may be adhered to— and it is best that they should be adhered to, though sometimes at the expense of justice, because certainty of title is thereby produced, and individual inconvenience is richly compensated by general good. But where multitudes are

affected by the construction of an instrument, great regard should be paid to *spirit*, and *intention*. In deciding this question, then, it will be important to consider the situation of the *United States* at the time of framing their present constitution, and the probable intent of the makers. The commercial states had a great preponderance, and it was the interest of *commerce*, which led to the calling of that convention which formed the constitution. It is not going too far, to assume, that a bankrupt law was thought *indispensable*; because it is expressly provided for. Yet, it could hardly be unknown to the members of the convention, that in constructing a system, to pervade every part of the union, there would be great difference of opinion, and, probably, great delay. So it has turned out.

It was not until 13 years after the constitution went into operation, that a bankrupt act was passed by Congress. When passed, it continued but five years, and ever since the states have been left to act for themselves. Now, it ought not to be supposed, unless clearly expressed, that the states were to be without bankrupt laws, during those periods in which Congress did not think proper to make them. Especially, as the convention had the matter directly before them, and had given power on the subject to Congress, in express terms. Why were not the states restrained from the exercise of this power, in terms equally express, if it was really the intent to restrain them? It must not be imagined, that it was in contemplation, to cover a *secret meaning* under expressions of general and doubtful import. I presume, it will hardly be contended, that the words, *impairing the obligation of contracts*, are to be understood in their greatest extent. If they are, the consequences are alarming. For, all acts respecting divorce, all acts of limitations, all acts by which private property has been taken for public use, or for the use of chartered companies, for roads, canals, &c. would be void; because, in all those cases, contracts are impaired. It would be questionable too, whether all *insolvent laws*, discharging the person of debtor from imprisonment, would not be void. Because these laws deprive the creditor of one very powerful engine for enforcing payment; an engine which operates on the feelings of friends and relations, and often extorts payment where debtors have no property of their own. So that

although the contract is not immediately impaired, yet the means of enforcing it are lessened; and when this is done, subsequently to the making of the contract, it places the creditor on a worse footing than that on which it was by both parties intended that he should stand, when the contract was made. The same remarks will apply to laws giving a stay of execution, after judgment; for by those, contrary to the intent of the parties, the creditor is kept out of his money.

1817.

The Farmers' and Mechanics Bank
v.
SMITH.

I believe all the states have passed insolvent laws, and Congress has passed one, for the district of Columbia, the validity of which has never been questioned. This act was not made under the express power given to Congress to pass a bankrupt law, (because that was to be *general* and *uniform*, throughout the Union), but under the power vested in them, to legislate for the district of Columbia. Had it been thought that an insolvent law, was the *impairing of a contract*, within the meaning of the constitution, we can hardly suppose, that Congress would have passed one for Columbia, although not prohibited expressly by the constitution; because, to say the least of it, it would have been setting a very bad example.

But, it may be asked, by what rule shall the meaning of these words " *impairing the obligation of contracts*," be restricted or limited, if they are not taken in their full extent? I confess, that to lay down a rule which would decide all cases, appears to me to be very difficult, perhaps impossible. One may be certain, that particular cases are not within the meaning of a law, without being able to enumerate all the cases that are within it. To attempt such enumerations, is unnecessary and dangerous, lest some should be omitted. It is safer to decide on each case, as it arises. It is probable, that, so far as respects contracts between individuals, the principal mischiefs which the convention meant to remedy, were those which arose, from *tender laws*, and laws by which creditors who sued for their debts, *were compelled to take property upon an appraisement.* Tender laws, are expressly mentioned; yet they would have been included in the general words, for they certainly alter the obligation of the contract. Laws of this kind, impair the contract, by giving an advantage to the debtor, without any consideration in favour of the credi-

tor. Bankrupt laws are essentially different. They afford, in many instances, advantages to both debtor and creditor; the debtor is discharged, on condition of surrendering his property, without delay, for the benefit of his creditors. The creditor is often a great loser. But he is sometimes a gainer, by the means which are offered him of compelling the debtor to a full discovery of his property, and obtaining possession of it, more quickly than in the usual course of law. The bankrupt system has been adopted in countries the most tenacious of the right of creditors, of which *England* and *Holland* are an example, so that without straining, it might be considered as an excepted case, when "laws impairing "the obligation of contracts," were mentioned. So it seems to have struck both individuals and public bodies, about the time of the adoption of the Federal Constitution. I well remember, that very soon after its adoption the subject was brought before the legislature of *Maryland*, upon the petition of a gentleman who prayed to be discharged from his debts on the surrender of his property for the benefit of his creditors. Several members of that legislature had been in the convention by which the Constitution had been recently formed. Doubts were entertained as to the right of the state to pass the law; but the prevailing opinion was in favour of the right, and the petition was granted. From that time to this, *Maryland* has been in the habit of making such laws. I am not exactly informed how many other states have followed her example; but I understand that *Rhode Island* and *New York* are among the number. Judicial decision is not wanting in favour of such right. Judge WASHINGTON, as I have mentioned, is against it. The Supreme Court of *New York* were for it, in the case of *Penniman* v. *Megs*, 9 *Johns.* 325. This Court has never decided directly upon the point; but they have discharged, without bail, where persons have been sued here, who had been discharged from the obligation of their contracts by laws of other states. I refer to the cases of *Hilliard* & *Pippet* v. *Greenleaf*, 5 *Binn.* 336, *in a note*, and *Boggs, &c.* v. *Teackle*, 5 *Binn.* 332. We are now called upon to decide whether an act of assembly of this Commonwealth be void, because of its violating the Constitution of the *United States*. That this Court possesses the power, and that it is bound

in duty, to declare a law void, when it violates the Constitution of this state or of the *United States*, has not been denied by the counsel for the plaintiff. It is a point on which I am well satisfied ; but at the same time it is certain, that it is a power of high responsibility, and not to be exercised but in cases *free from doubt*. Such has been the opinion frequently expressed by Judges of the highest respectability in different states, and sanctioned by the Supreme Court of the *United States*. I will not pretend to say, that the meaning of that part of the Constitution, on which this question arises, is *clear*. But I may safely say, that it is *doubtful*. According to the established principles of construction, therefore, in doubtful cases, I am of opinion that the law of the state is valid. It follows, that judgment should be entered for the defendant.

I am authorised to say, and I say it with great pleasure, that my brother, DUNCAN, is of the same sentiment as the rest of the Court, although he gave no formal opinion, not having heard the argument.

GIBSON J. declared that he concurred in the opinion of the Chief Justice very fully.

Judgment for the defendant.