**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jonathan McDONOUGH, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 2014.

Filed July 21, 2014.

Michael J. Garofalo, Uniontown, for appellant.

Anthony S. Iannamorelli, Jr., Assistant District Attorney, Uniontown, for Commonwealth, appellee.

BEFORE: BENDER, P.J.E., LAZARUS, J., and OTT, J.

OPINION BY LAZARUS, J.:

Jonathan McDonough appeals from his judgment of sentence, entered in the Court of Common Pleas of Fayette County, after he was · convicted by a jury of indecent assault,[1] a second-degree misdemeanor.[2] McDonough was sentenced to one to two years' incarceration,[3] in addition to being required to register for 15 years as a sex offender under our Commonwealth's Sexual Offender Registration and Notification Act (SORNA).[4] On appeal, McDonough challenges the sufficiency of the evidence regarding whether the victim consented to his sexual acts and the constitutionality of SORNA's sex-offender registration provisions. After review, we affirm.

McDonough and the victim had an "on again, off again" relationship for more than six years prior to the alleged incident. They had two children together. On August 29, 2012, McDonough allegedly inserted his fingers into the victim's vagina, performed oral sex upon her, and had sexual intercourse with her, all without the victim's consent. The victim testified that she repeatedly told McDonough "no" throughout the entire encounter. Although in his pre-arrest statement to the police McDonough admitted the victim did not consent to any of his actions, at trial he testified that the victim consented to his sexual conduct on the night in question.

After a jury trial, McDonough was convicted of indecent assault and sentenced to one to two years in prison. McDonough was classified as a "Tier 1" offender under SORNA and ordered to register with the Pennsylvania State Police for 15 years as a sexual offender.[5] *See* 42 Pa.C.S. § 9799.15(a)(1).

■ McDonough first claims that the Commonwealth failed to prove, beyond a reasonable doubt, that the victim did not consent to his actions where she admitted to having had consensual sex with him prior to, during, and after the alleged incident.

In reviewing a challenge to the sufficiency of the evidence, we must determine

1. 18 Pa.C.S. § 3126(a)(1).

2. McDonough was also found guilty of harassment. However, no separate penalty was imposed for that conviction. McDonough was initially charged with the following offenses: rape, involuntary deviate sexual intercourse (IDSI), corruption of minors, and endangering the welfare of children. Only the indecent assault charge was held for court.

3. The trial court also determined that McDonough was not eligible under the Recidivism Risk Reduction Incentive (RRRI) Act, due to the nature of the offense.

4. *See* 42 Pa.C.S. § 9799.10–9799.41. SORNA, the successor to Megan's Law II, was enacted on December 20, 2011, and became effective on December 20, 2012. Because McDonough was convicted after the effective date of SORNA, he is subject to its provisions. *See* 42 Pa.C.S. § 9799.13(1).

5. McDonough was not found to be a sexually violent predator by the Sexual Offender Assessment Board.

whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall*, 758 A.2d 669, 674 (Pa.Super.2000).

 ■ A person is guilty of indecent assault under the Crimes Code:

> [I]if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so **without the complainant's consent**[.]

18 Pa.C.S. § 3126(a)(1) (emphasis added); *see Commonwealth v. Todd*, 348 Pa.Super. 453, 502 A.2d 631 (1985) (absence of consent is essential element of indecent assault). The uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant. *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super.2006) (citation omitted).

At trial, the victim admitted to having been in an "on and off" relationship with McDonough for 6½ years [6] and having had two children with him. N.T. Jury Trial, 9/3/2013, at 12. The victim also testified that she had sex with McDonough since the incident giving rise to the instant charges. *Id.* However, the victim unequivocally testified that at the time of the alleged incident in August 2012, the two were no longer in a relationship. *Id.* at 11–12.

At trial, the victim testified regarding her lack of consent to McDonough's actions as follows:

> So he pushed me down [on the bed], got on top of me, pulled down my pants, and started to have intercourse with me, and I told him no. I am like no, please stop. He wouldn't stop.
>
> * * *
>
> I was telling him no. I was telling him like please stop, you know, I don't want to do this.
>
> * * *
>
> He progressed during the intercourse. I told him again to stop. He wouldn't stop.

*Id.* at 8. When asked by the assistant district attorney whether any of the sex she had with McDonough on the night in question was consensual, the victim answered, "[n]o." *Id.* at 9.

Instantly, McDonough, himself, testified that the victim initially told him to stop "fingering" her and that he "stopped immediately as soon as she said that." *Id.* at 33. However, he also testified that after that moment, she never told him "no" or to stop having any other sexual contact (which consisted of oral and vaginal sex) on the date in question. *Id.* at 34–36. McDonough's trial testimony, however, is inconsistent with his written and verbal statements to the authorities, just days after the incident, where he explicitly indicated that the victim told him "no" repeatedly throughout the entire encounter and that he knew what "no" meant. Affidavit of Probable Cause, 9/1/2012, at 1–2.

---

6. The victim testified that she and McDonough broke up in April 2012 and she returned to live with him at the beginning of August 2012 until she could find a place of her own. N.T. Jury Trial, 9/3/2013, at 11.

Despite McDonough's trial testimony that the victim consented to his sexual acts, the jury, as the trier of fact, was free to believe all, part, or none of the evidence presented by the witnesses. *Commonwealth v. Gooding*, 818 A.2d 546 (Pa.Super.2003). It is evident from the verdict that the jury obviously found the victim's testimony credible and chose not to believe McDonough's version of the events. Because it was within the province of the jury to make these credibility findings with regard to the issue of consent, McDonough's first claim fails. *Charlton, supra; Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994) (indecent assault conviction upheld on appeal where victim repeatedly said "no" throughout encounter; viewing testimony in light most favorable to Commonwealth as verdict winner, jury reasonably could have inferred that victim did not consent to indecent contact, and, therefore, evidence was sufficient to support jury's verdict). The evidence was sufficient to prove the element of consent for the crime of indecent assault beyond a reasonable doubt. *Randall, supra.*

 In his final issues, McDonough challenges the registration provisions of SORNA. Specifically, he contends that it is unconstitutional and illegal to require an individual to register as a sex offender for 15 years for a crime that carries a maximum penalty of only two years in prison.[7] McDonough also argues that the registration requirements of SORNA and its predecessor statute, Megan's Law,[8] are not civil in nature because they impose restrictions and requirements which, if violated, can result in imprisonment.[9]

On December 20, 2011, the legislature replaced Megan's Law with SORNA, effective December 20, 2012, to strengthen registration requirements for sex offenders and to bring Pennsylvania into compliance with the Adam Walsh Child Protection and Safety Act, 42 U.S.C.A. § 16901, *et seq. Commonwealth v. Sampolski*, 89 A.3d 1287, 1288 (Pa.Super.2014). Section 9799.14 of SORNA establishes a three-tiered system of specifically enumerated offenses requiring registration for sexual offenders for differing lengths of time. *Id.* Pursuant to section 9799.15(a)(1), a person convicted of a Tier I offense, like McDonough, must register for 15 years. A Tier II offender must register for 25 years, while a Tier III offender must register for the remainder of his or her life. 42 Pa. C.S. § 9799.15(a)(2), (a)(3).

McDonough relies upon *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003), to support his argument that requiring an individual to register for many years longer than the maximum penalty of the crime itself is excessive and the registration provisions should be struck down as unconstitutional punishment under the state and federal constitutions. In *Williams*, our Supreme Court was asked to decide whether certain provisions of Megan's Law II were constitutional as it applied to sexually violent predators (SVP's). The *Williams* Court specifically held that the registration, notification, and counseling provisions of Megan's Law II, to offenders deemed to be SVP's, were

---

7. In one of these related issues, McDonough claims that SORNA is unconstitutional where the incident occurred "between consenting adults." Having already established that the jury properly found that the victim did not consent to McDonough's sexual acts, this issue is moot.

8. 42 Pa.C.S. §§ 9791–9799.9.

9. As with all questions of law, an appellate court's scope of review is plenary and its standard of review is limited to determining whether the trial court committed legal error. *Commonwealth v. Benner*, 853 A.2d 1068 (Pa.Super.2004).

non-punitive, regulatory measures supporting a legitimate governmental purpose. *Id.* at 986. However, the Court did find that the prescribed penalties that attach to SVP's for failure to register and verify their residence were unconstitutionally punitive and, therefore, invalidated those provisions. *Id.*

McDonough, while not classified as an SVP, uses *Williams* to argue by analogy that the provisions imposing penalties for failure to comply with the registration requirements of the Law are similarly unconstitutional as applied to him. However, even assuming that his 15–year registration requirement is excessive in comparison to his actual sentence of one to two years' imprisonment, we cannot ignore our Supreme Court's pronouncement that:

> Because we do not view the registration requirements as punitive but, rather, remedial, **we do not perceive mandating compliance by offenders who have served their maximum term to be improper.** Furthermore, the fact that an offender may be held until such information is furnished is no different from confining someone in a civil contempt proceeding. While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if release is conditioned upon one's willingness to comply with a particular mandate.

*Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616, 622 (1999) (emphasis added) (citations omitted). Similarly, in *Benner, supra,* this Court also recognized that:

> The registration provisions of Megan's Law do not constitute criminal punishment. The registration requirement is properly characterized as a collateral consequence of the defendant's plea, as it cannot be considered to have a definite, immediate and largely automatic effect on a defendant's punishment.

\* \* \*

Because the registration requirements under Megan's Law impose only collateral consequences of the actual sentence, their application is not limited by the factors that control the imposition of sentence. Thus, while a defendant may be subject to conviction only under statutes in effect on the date of his acts, and sentence configuration under the guidelines in effect on that same date, the application of the registration requirements under Megan's Law is not so limited. This is so due to the collateral nature of the registration requirement.

*Benner,* 853 A.2d at 1070–71.

While *Gaffney* and *Benner* were decided prior to the effective date of SORNA, the same principles behind the registration requirements for sexual offenders under Megan's Law apply to those subject to SORNA. Namely, to effectuate, through remedial legislation, the non-punitive goal of public safety. *Gaffney,* 733 A.2d at 619; *see* 42 Pa.C.S. § 9791(a)(legislative findings and declaration of policy behind registration of sexual offenders). In fact, one of the main purposes behind SORNA is to fortify the registration provisions applicable to such offenders. *See* 42 Pa.C.S. § 9799.10 (purpose of registration of sexual offenders under SORNA); *see also* H.R. 75, 195th Gen. Assemb. Reg. Sess. (Pa.2012). With this purpose in mind, we cannot find that the law is unconstitutional as it applies to McDonough. He has offered neither competent nor credible evidence to undermine the legislative findings behind SORNA's registration provisions. Accordingly, we find no error. *Benner, supra.*

Judgment of sentence affirmed.