J-A26044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TAURUS KENYATA GILBERT, | |
| Appellant | No. 287 MDA 2014 |

Appeal from the Order Entered January 15, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002038-2003

BEFORE: BOWES, MUNDY, and JENKINS, JJ.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED FEBRUARY 10, 2015**

I concur with the learned majority's assessment in regards to Appellant's plea bargain claim. However, as I disagree with the majority's analysis in several other key respects, I respectfully dissent from those aspects of its decision. Since the majority addresses Appellant's second claim first and his first issue second, as a matter of consistency and for ease of reference, I will do the same. Accordingly, I consider Appellant's position with respect to his plea bargain and whether ***Commonwealth v. Hainesworth***, 82 A.3d 444 (Pa.Super. 2013) (*en banc*) and ***Commonwealth v. Nase***, 2014 PA Super 194 control, first.

I agree with the majority insofar as it recognizes the distinction between this matter and ***Hainesworth***. Therein, it was apparent that the

defendant's plea was specifically designed to avoid sex offender registration. The record in this case does not reveal the same considerations. Thus, the majority accurately holds that **Hainesworth** does not compel reversal. In addition, I am in accord with the majority's view that **Nase** is not controlling on the plea agreement question. In **Nase**, as part of the defendant's plea, the Commonwealth withdrew more serious charges and, in exchange, the defendant agreed to plead to other offenses that required a ten-year period of registration. The record demonstrated that the registration period was an essential part of the plea negotiations. The current record is silent as to what impact registration had on Appellant's plea agreement.

However, as it relates to Appellant's Pennsylvania constitutional due process claim, I disagree with the majority's finding that "our case law is clear—application of SORNA registration requirements are not violative of a defendant's due process rights." Majority Memorandum, at 8. In support of this claim, the majority cites to **Commonwealth v. Williams**, 832 A.2d 962 (Pa. 2003), **Commonwealth v. McDonough**, 96 A.3d 1067 (Pa.Super. 2014), and **Commonwealth v. Benner**, 853 A.2d 1068 (Pa.Super. 2004).

**Williams** and **McDonough** did not consider a substantive or procedural due process argument; in fact, in **Williams**, the Pennsylvania Supreme Court remanded to allow the trial court to consider the defendant's additional constitutional arguments, including a due process claim, after addressing his *ex post facto* argument. **Williams**, **supra** at 986 n.27.

- 2 -

While **Benner** used the phrase "due process" one time, it did not undertake an analysis under the Pennsylvania Constitution. Essential to the **Benner** Court's holding was the fact that the defendant therein was still under supervision for his crime. **Benner**, **supra** at 1072. In this case, Appellant's probation was terminated early and he was no longer on probation. Hence, he had completed his judgment of sentence. Admittedly, SORNA requires additional registration for certain offenders so long as they were still subject to their original registration period. This fact, however, is an important distinction not recognized by the majority.

Before performing a Pennsylvania constitutional analysis relative to due process, I will consider in more detail the cases relied on by the majority in support of its dismissal of Appellant's due process claim. The majority erroneously asserts that the **Williams** Court concluded that, "Megan's Law II registration, counselling, and notification requirements did not violate due process." Majority Memorandum, 7 (citing **Williams**, **supra** at 986). The issue before the Pennsylvania Supreme Court was not a federal constitution or Pennsylvania constitution due process claim. Rather, the trial court had ruled Megan's Law II was a violation of the federal *ex post facto* clause.

The **Williams** Court's discussion on the page cited by the majority is actually the portion of the opinion in which it struck down two aspects of Megan's Law II, but held the remainder of the statute severable. **See Williams**, **supra** at 986 ("Having concluded that the portions of Sections

9795.2(d)(2) and 9796(e)(2) applicable to sexually violent predators are constitutionally infirm, it remains to determine whether they can be severed from the Act."). The mention of "due process" on the applicable page is in reference to the Commonwealth's argument that life imprisonment for violating the registration scheme could only occur after "a criminal proceeding in which the full panoply of due process protections was afforded." *Id*. The **Williams** Court rejected the Commonwealth's argument in this respect. *Id*. ("This argument overlooks the fact that the new substantive offense proceeds directly from the Act's enforcement provisions, and, furthermore, conviction would be a fairly trivial matter."). Thus, the majority's citation simply does not support its conclusion.

No substantive or procedural due process analysis occurs anywhere within the **Williams** decision. The focus of the **Williams** Court's analysis was whether Megan's Law II constituted punishment for purposes of the *ex post facto* clause of the federal constitution. Indeed, in remanding the case "to the trial court for consideration of [the defendants'] remaining constitutional challenges[,]" the High Court noted that, "[i]n addition to claiming that Megan's Law is punitive, [the defendants'] assert that it is void for vagueness and violative of substantive due process guarantees and the separation of powers doctrine." *Id*. Since the Supreme Court did not address due process, **Williams** does not sustain the majority's holding.

Similarly, **McDonough**, **supra**, does not pertain to a constitutional due process argument. The majority refers to **McDonough**, **supra** at 1071, as support. That entire page is discussing whether SORNA was punitive. Neither the phrase "due process" or its Pennsylvania equivalent, "law of the land," appears anywhere in the text. The defendant's averment therein was that "it is unconstitutional and illegal to require an individual to register as a sex offender for 15 years for a crime that carries a maximum penalty of only two years in prison." **Id**. at 1070. Therefore, **McDonough** has no bearing on the constitutional due process argument that retroactively requiring additional registration, absent any process, violates the Pennsylvania Constitution.

The only case that arguably could support the majority's due process analysis is **Benner**, **supra**. Benner did not raise a substantive or procedural due process argument. **Benner**, **supra** at 1070 (setting forth Benner's two issues). Nonetheless, in rejecting Benner's claim that he should not be subject to registration at all, this Court stated in passing, "We have concluded accordingly that the principles of due process that require the court to inform the defendant of the length of his prospective sentence prior to accepting his plea do not compel the court to inform him of the registration requirement." **Id**. at 1070-1071. We then held that, "the failure of the trial court to inform Benner of the registration requirement

prior to accepting his plea invalidates neither the plea nor application of the registration requirement under Megan's [Law] I." *Id*. at 1071.

Instantly, Appellant is not seeking to withdraw his plea on the basis that he was not informed of his registration requirements. Instead, his issue is that retroactively increasing his registration period from ten years to lifetime reporting after he completed his sentence violates his due process rights. *Benner* is, thus, inapposite. Pointedly, as mentioned previously, essential to the *Benner* Court's holding was that Benner was still serving his sentence. *Id*. at 1072 (emphasis added) ("We read these cases to suggest that the collateral effect of current legislation may be imposed on the defendant **so long as he remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense**.").

The only Pennsylvania Supreme Court opinion to address SORNA and procedural due process held that SORNA violated the rights of juveniles. *See In re J.B.*, ___ A.3d ___ (Pa. 2014) (filed December 29, 2014). Therein, the High Court ruled that registration for juvenile offenders, all of whom were previously not subject to sex offender registration, violated due process. The juveniles in that case each had been adjudicated delinquent before SORNA's effective date, but were still subject to juvenile court supervision on that date. Thus, unlike Appellant herein, the juveniles were still under court supervision. Pursuant to SORNA, juveniles who were

subject to the jurisdiction of the juvenile court, on the basis of certain sex offense adjudications, were required to register as sex offenders. Juveniles required to register for life, contrary to adults, were to be afforded a hearing twenty-five years after the completion of court supervision. At that hearing, the juvenile offender would be able to have registration terminated if he or she met certain criteria. The juvenile offender would have to show by clear and convincing evidence that he or she met the statutory criteria. Admittedly, the Supreme Court focused extensively on the difference between juveniles and adults. It concluded that creating an irrebuttable presumption that the juveniles, based solely on their adjudication, demonstrated a high risk of recidivism, was unconstitutional. Importantly for our purposes, the Pennsylvania Supreme Court noted that the Pennsylvania Constitution expressly protects a person's reputation.

Having shown that our case law is not clear that a retroactive increase of registration requirements after a defendant completes his sentence, without any process, does not violate the Pennsylvania Constitution's due process protections, I now consider Appellant's position. Appellant's issue melds both a substantive due process and procedural due process argument. He begins by arguing that fundamental fairness under the federal constitution and Article I, §§ 1, 9, and 11 are violated by SORNA's retroactive registration requirements. Appellant contends that lifetime registration restricts his liberty interest without due process, noting that he

must appear quarterly for registration for his life and his personal information will then be listed online to the public. He adds that he cannot change his address, vehicle, or aspects of his appearance without reporting such changes to Pennsylvania State Police.[1] Failure to comply will result in felony charges, subjecting him to a potential ten year jail sentence.

Appellant acknowledges that he agreed to "have his liberty interests restricted for ten years under Megan's Law, 42 Pa.C.S.A. § 9795.1, but he did not have notice of and did not agree to have his liberty interests restricted for his lifetime." The notice portion of Appellant's arguments are related to procedural due process. In addition, Appellant highlights that because his probation had been terminated, he was no longer under the jurisdiction of the court system. Appellant maintains that where he did not reoffend and complied with his probationary sentence, fundamental fairness requires notice and the opportunity to be heard before being subjected to lifetime registration.

According to Appellant, his privacy interests are also violated where he was not given notice or an opportunity to be heard with respect to increasing his registration requirements. In this respect, he points out that his name,

---

[1] In a separate portion of his brief, Appellant provides that he may not travel internationally without appearing in person at a registration site three weeks before his departure and must provide the dates of travel, his destination, and where he will be lodging. *See* Appellant's brief at 20 (citing 42 Pa.C.S. § 9799.15(i)).

birthdate, residence, place of employment, picture, vehicle information, offense description, and tier designation under SORNA are placed on a website maintained by the Pennsylvania State Police. In contrast, at the time of Appellant's sentence he "was only required to provide his name, identifying features, address, offense history, photograph, and documentation for mental/personality disorders[.]" Appellant's brief at 14. Quoting from ***Wisconsin v. Constantineau***, 400 U.S. 433, 437 (1971), Appellant posits, "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential." Appellant's brief at 14.

Although the Pennsylvania Constitution does not utilize the term "due process," the phrase "law of the land," used in Article I, § 9, is synonymous with that term. ***Craig v. Kline***, 65 Pa. 399, 413 (1870); ***Murray v. Hoboken Land & Imp. Co.***, 59 U.S. 272, 276 (1855); ***see also Commonwealth v. Kratsas***, 764 A.2d 20, 49 n.5 (2001); ***Commonwealth v. Rose***, 81 A.3d 123, 126 n.2 (Pa.Super. 2013), *allowance of appeal granted on other ground*, 95 A.3d 274 (Pa. 2014); ***Commonwealth v. Harrell***, 65 A.3d 420, 448 n.10 (Pa.Super. 2013) (Donohue, J., dissenting)). Accordingly, Article I, § 9 of the Pennsylvania Constitution guarantees due process protections. That provision reads in relevant part, "nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa.Const. Art. I, § 9.

Article I, § 1, cited by Appellant, reads, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa.Const. Art. I, § 1. The provision is a close analogue to the turn of phrase in one of America's most illustrious documents, the Declaration of Independence. Lastly, Article I, § 11 is Pennsylvania's open courts requirement. That declaration sets forth,

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa.Const. Art. 1, § 11. This latter provision has been part of the Pennsylvania Constitution since 1790.[2] Article I, § 9 and Article I, § 1, have, with minor alterations, been a part of the Pennsylvania charter since 1776.[3]

When considering the Pennsylvania Constitution, "'great regard should be paid to spirit and intention' and it is important to examine the 'probable intent of the makers.'" **Rose**, **supra** at 127 (citing **Farmers' & Mechanics'**

---

[2] The Pennsylvania Constitution of 1776 also included an open courts proviso, which stated in pertinent part, "All courts shall be open, and justice shall be impartially administered without corruption or unnecessary delay[.]" Pa.Const. Chapt. II, Art. 26 (1776).

[3] Relevant to this case, Article I, § 1 inserted the reference to reputation in the 1790 Constitution.

*Bank v. Smith*, 3 Serg. & Rawle 63, 1817 WL 1771, 5 (Pa. 1817), *reversed on other grounds* at 19 U.S. 131 (1821) (emphases removed), and *Firing v. Kephart*, 353 A.2d 833, 835-836 (Pa. 1976)). In performing this examination, we keep in mind that "[a] constitution is made, not particularly for the inspection of lawyers, but for the inspection of the million, that they may read and discern in it their rights and their duties; and it is consequently expressed in the terms that are most familiar to them." *Monongahela Navigation Co. v. Coons*, 6 Watts & Serg. 101, 114 (Pa. 1843).

Thus, we construe words in their plain and natural meaning, unless the words themselves denote a technical sense. *Id*. "Concomitantly, a fundamental precept in interpreting our constitution is that the language 'must be interpreted in its popular sense, as understood by the people when they voted on its adoption. Our ultimate touchstone is the actual language of the Constitution itself.'" *Rose*, *supra* at 127 (quoting *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918, 939 (Pa. 2006)). In short, we consider "the original public meaning of the text at issue, giving due regard to both its spirit and the intent of the framers of the clause." *Rose*, *supra* at 127.

Generally, our courts have maintained that federal and state due process claims are coextensive. *Commonwealth v. Sims*, 919 A.2d 931, 941 n.6 (Pa. 2007). The United States Supreme Court has yet to consider

constitutional concerns relative to the retroactive increase of registration requirements under SORNA for a person not serving a sentence, though it has addressed earlier sex offender registration statutes within the *ex post facto* context. **Smith v. Doe**, 538 U.S. 84 (2003); **compare also Connecticut Department of Public Safety v. Doe**, 538 U.S. 1 (2003) (hearing on current dangerousness of sex offender not required to comport with due process).

The phrases "law of the land" and "due process of law" have a long storied history. The *Magna Carta* exclaimed, "'No Freeman shall be taken, or imprisoned, or be disseised of his Freehold, or Liberties, or free Customs, or be outlawed, or exiled, or any otherwise destroyed; nor will we not pass upon him, nor condemn him, but by lawful Judgment of his Peers, or by Law of the Land." **See In re Winship**, 397 U.S. 358, 378-379, (1970) (Black, J., dissenting). As far back as 1642, Lord Coke, in his influential Institutes, opined that "due process of law" is synonymous with "law of the land." **Id**. at 379; **Hoboken Land**, **supra** at 276. "As early as 1683 there was an effort in Pennsylvania to establish 'due process of law' as a part of the fundamental law of the colony. William Penn favored it. The Crown opposed it." **Commonwealth ex rel. McGlinn v. Smith**, 24 A.2d 1, 5 n.2 (Pa. 1942). Indeed, according to the Pennsylvania Supreme Court, "The only proposal for a 'due process clause' in a Federal Bill of Rights came from members of the Constitutional Convention from Pennsylvania." **Id**.

Justice Curtis, writing in 1855 for the United States Supreme Court, opined,

> The constitutions which had been adopted by the several States before the formation of the federal constitution, following the language of the great charter more closely, generally contained the words, 'but by the judgment of his peers, or the law of the land.' The ordinance of congress of July 13, 1787, for the government of the territory of the United States northwest of the River Ohio, used the same words.

**Hoboken Land**, **supra** at 276. He continued by acknowledging that the federal constitution "contains no description of those processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process." **Id**. However, the High Court set forth, "It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave congress free to make any process 'due process of law,' by its mere will." **Id**. Even before Justice Curtis' opinion, the Pennsylvania Supreme Court recognized that due process is not satisfied by the mere passage of legislation.

In **Norman v. Heist**, 5 Watts & Serg. 171 (Pa. 1843), the Court held that Pennsylvania's law of the land provision was designed "to exclude arbitrary power from every branch of the government; and there would be no exclusion of it, if such rescripts or decrees were allowed to take effect in the form of a statute." **Heist**, **supra** at 173. There, the Pennsylvania High

Court ruled that a statute that retroactively deprived a party of property violated due process. The "law of the land" had to be "a pre-existent rule of conduct[.]" *Id*. In **Brown v. Hummel**, 6 Pa. 86 (1847), the Pennsylvania Supreme Court eloquently stated,

> What, then, is the law of the land, as it relates to the protection of private rights? Does it mean bills of attainder in the shape of an act of Assembly, whereby a man's property is swept away from him without hearing trial, or judgment, or the opportunity of making known his rights or producing his evidence? It certainly does not. It was to guard against such things which had been common in the reign of the Stuarts and their predecessors, and with which our forefathers of the Anglo-Saxon race were familiar, that these irrevocable and unassailable provisions were introduced into the constitution. The law of the land does not mean acts of Assembly in regard to private rights, franchises, and interests, which are the subject of property and individual dominion. But it means what is clearly indicated by the other provisions of the bill of rights, to wit: the law of the individual case, as established in a fair and open trial, or an opportunity given for one in court, and by due course and process of law. "I am a Roman citizen," were once words of power, which brought the proudest proconsul to a pause, when he was about to commit oppression: and the talismanic words, I am a citizen of Pennsylvania, secures to the individual his private rights, unless they are taken from him by a trial, where he has an opportunity of being heard by himself, his counsel, and his testimony, *more majorum*, according to the laws and customs of our fathers, and the securities and safeguards of the constitution.

**Hummel***, supra* at 91.

Counsel in **Menges v. Dentler**, 33 Pa. 495 (1859), also argued that "law of the land" did not merely mean legislative acts. Rather, they maintained that laws that impaired or destroyed vested rights were in

violation of due process. The **Dentler** Court considered both Article I, § 9 and Article I, § 11, and accepted that position. In doing so, it set forth,

> These provisions are taken from Magna Charta; but they have higher value here than in England, just as a constitution adopted by the people is of higher value than a mere act of Parliament. Parliament may disregard Magna Charta, but our legislature must obey the constitution. These provisions are, therefore, imperative limitations of legislative authority, and imperative impositions of judicial duty.

**Dentler**, **supra** at 498. The Court continued, admittedly under the facts of the issue in question, and posited,

> The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the parties. If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated.

**Id**. In sum, as the Pennsylvania Supreme Court found in **Kline**, **supra**, due process "does not mean merely an act of the legislature, for that would abrogate all restriction on legislative power[.]" **Kline**, **supra** at 413.

In determining whether a law violates due process, we first "examine the constitution itself, to see whether this process be in conflict with any of its provisions." **Hoboken Land**, **supra** at 276. Where no other constitutional proviso is violated, "we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country." **Id**. at 276-277.

Appellant has argued that the Pennsylvania Constitution has been violated by the law on several grounds. One, which is his final issue, relates to *ex post facto* concerns. This Court has already held that the federal constitution's *ex post facto* prohibition was not violated by SORNA. ***Commonwealth v. Perez***, 97 A.3d 747 (Pa.Super. 2014). Because the defendant therein did not adequately argue the Pennsylvania Constitution required a separate analysis, we did not undertake a discussion on the merits of that position. Similarly, Appellant levels no distinct Pennsylvania constitutional argument. Accordingly, ***Perez*** controls. Nonetheless, as mentioned, Appellant also submits that Article I, § 1 and § 11, as it relates to his reputation, are infringed by SORNA's retroactive registration requirement and he briefly sets forth privacy concerns.

An individual's reputation was considered fundamental by Pennsylvanians as it was added to Pennsylvania's 1790 constitution and is included in multiple provisions. In fact, Pennsylvania's prohibition against self-incrimination was originally construed as protecting against disclosure of information that would subject the individual to shame, ignominy, or contempt. ***See Respublica v. Gibbs***, 3 Yeates 429, 437 (Pa. 1802) (discussing right against self-incrimination and opining, "The words *accusare* or *prodere* are general terms, and their sense is not confined to cases, where the answers to the questions proposed would induce to the punishment of the party; if they would involve him in shame or reproach, he

is under no obligation to answer them."); **Galbreath v. Eichelberger**, 3 Yeates 515 (Pa. 1803); **see also Commonwealth v. Swinehart**, 664 A.2d 957 (Pa. 1995).

The recent decision by our Supreme Court declaring SORNA violative of a juvenile's procedural due process rights highlighted that lifetime registration impacts the "right to reputation under the Pennsylvania Constitution." **In re J.B.**, **supra** slip opinion at 28. Further, in **Commonwealth v. Hayes,** 674 A.2d 677, 680 (Pa. 1996) (citation and footnote omitted), our High Court opined that this Commonwealth has "observed a tradition within Pennsylvania common law for protecting a witness from questions which would damage the witness' reputation. This concern for an individual's reputation is consistent with our long established sense of a heightened awareness of personal privacy in Pennsylvania."

The right to privacy, though not expressly included in the Pennsylvania Constitution, has been considered to be part of that document. **See Commonwealth v. Edmunds**, 586 A.2d 887 (Pa. 1991) (discussing privacy in context of search and seizure jurisprudence). Of course, much of the case law relevant to privacy focuses on the prohibition against unreasonable searches and seizures, which is not relevant here. This Court has defined the broad based conception of a right to privacy as "the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short, … the right to be let alone." **Hull v. Curtis Publishing**

***Co.***, 125 A.2d 644, 645-646 (Pa. Super. 1956) (discussing tort of invasion of privacy). In addition, we have opined that the right to privacy has been defined as "the right of a person to be free from unwarranted publicity or unwarranted approbation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion of one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." ***Id***. at 646.

Important in this matter is also the retroactive application of the new sex offender registration requirements. William Blackstone, in his influential Commentaries on the Laws of England, posited, "All laws should be therefore made to commence *in futuro*, and be notified before their commencement[.]" 1 Tucker's Blackstone, 46 (Philadelphia, 1803).[4] "[S]ince the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." ***Kaiser Aluminum & Chemical Corp. v. Bonjorno***, 494 U.S. 827, 841 (1990) (Scalia, J., concurring). Similarly, this Court in ***Anderson v. Sunray Elec. Inc.***, 98 A.2d 374,

---

[4]  Blackstone made this reference after discussing Caligula, the notorious Roman emperor, and his reported practice of posting laws so high on pillars that the people could not read them. This practice is likely familiar to readers of George Orwell's famous book, Animal Farm. Therein, the leaders on the farm, the pigs, repeatedly changed the laws and posted them where the other animals could not discern them.

375 (Pa.Super. 1953), has recognized, "Unless the legislature clearly manifests its intention otherwise, no law may be construed to be retroactive, and then only where it does not destroy vested rights or impair the obligations of contracts." **See also** 1 Pa.C.S. § 1926.[5]

While the legislature here did expressly indicate that this law would apply retroactively, that does not alter the fact that from the early days of this Commonwealth our courts have recognized the odious nature of retroactive civil laws. In **Commonwealth v. Duane**, 1 Binn. 601 (Pa. 1809), the Pennsylvania Supreme Court distinguished between the prohibition against civil retroactive laws and ameliorative retrospective criminal legislation. There, the defendant was indicted and found guilty of committing a libel against Pennsylvania's governor in his official capacity. However, prior to his judgment of sentence, the legislature passed a law stating that no person was to be prosecuted by indictment for publication of papers or for investigating the official conduct of men in a public capacity. Counsel for Duane argued that the law interfered with no vested right, did not violate any right of property, and effectively terminated his prosecution. The Pennsylvania Supreme Court agreed, with Chief Justice Tilghman stating, "If the same expression had been used, as applied to a civil action, I should have thought myself warranted in giving it a different construction,

_____

[5] 1 Pa.C.S. § 1926 codified Pennsylvania common law.

because then it would have operated in a retrospective manner, so as to take away from a citizen a vested right. But there is a wide difference between a civil and a criminal action." *Id*. at 608-609.

Justice Joseph Story, writing while on circuit, offered a concise summary of retroactive civil laws, which has subsequently been adopted by the United States Supreme Court, *see Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and utilized by courts in this Commonwealth. Justice Story opined, "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective[.]" *Society for the Propagation of the Gospel v. Wheeler*, 22 F.Cas. 756, 767 (1814).[6] Justice Duncan of the Pennsylvania Supreme Court echoed this definition and cited Justice Story's opinion in *Eakin v. Raub*, 12 Serg. & Rawle 330

_____

[6] This Court has defined a vested right as one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *In re R.T.*, 778 A.2d 670, 679 (Pa.Super. 2001). In *Eakin v. Raub*, 12 Serg. & Rawle 330, 360 (Pa. 1825), Justice Duncan opined, "a vested right is where a man has power to do certain actions, or to possess certain things, according to the laws of the land."

(Pa. 1825), and recognized the distinction between the prohibition against civil retroactive law and ameliorative criminal legislation. *Id*. at 362.[7]

A number of other state courts have construed versions of SORNA as violating constitutional retroactivity clauses or that state's *ex post facto* prohibition. *Starkey v. Oklahoma Dept. of Corrections*, 305 P.3d 1004 (Okla. 2013) (SORNA statute violated *ex post facto* clause of state constitution); *Doe v. Department of Public Safety and Correctional Services*, 62 A.3d 123 (Md. 2013) (Maryland sex offender statute violated *ex post facto* clause of state constitution); *State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011) (Ohio SORNA statute violated state constitutional prohibition against retroactive laws); *cf*. *State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010) (Ohio SORNA violated separation of powers) *State v. Letalien,* 985 A.2d 4 (Me. 2009) (*ex post facto* violation to apply retroactively the enhanced requirements of SORNA of 1999 when, by so doing, the application revises and enhances sex offender registration requirements that were a part of the offender's original sentence); *but see*

---

[7]  Civil retrospective law was also permissible where, the law "does not violate the constitutional prohibitions," and provided "to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of recovering redress by legal proceedings." *Hepburn v. Curts*, 7 Watts 300, 301 (Pa. 1838). Thus, statutory law that benefited individuals without invading the vested rights of another was lawful.

*Doe I v. Williams*, 61 A.3d 718 (Me. 2013) (SORNA statute at issue did not violate substantive or procedural due process or *ex post facto* clause).

Concomitantly, several states have upheld retroactive sex offender registration changes under *ex post facto* and due process challenges. *Doe I v. Williams*, *supra*; *Roe v. Replogle*, 408 S.W.3d 759 (Mo. 2013) (federal SORNA law, applicable to residents of Missouri, did not violate substantive due process); *Smith v. Commonwealth*, 743 S.E.2d 146 (Va. 2013). As noted, this Court has also rejected a federal *ex post facto* challenge. *Perez*, *supra*. Of course, I have already noted that the Pennsylvania Supreme Court has declared retroactive application of SORNA to juvenile offenders to violate due process. *See In re J.B.*, *supra*.

Having outlined the text, a brief history of Pennsylvania's due process, reputation, and privacy protections, as well as this Commonwealth's general distaste for retroactive laws, I now consider the current manner in which Pennsylvania courts address due process issues. "The due process clauses of the United States and Pennsylvania constitutions ..., generally, embody the principle of fundamental fairness, entitling every individual to be free from arbitrary or oppressive government conduct." *Commonwealth v. Brown*, 52 A.3d 1139, 1162 (Pa. 2012).

Since Appellant has not developed a substantive due process argument, despite contending that he was denied fundamental fairness, and having honed in on the lack of notice and an opportunity to be heard, I too

will focus on his positions regarding procedural due process. Procedural due process at its core has required notice and an opportunity to be heard. *Fiore v. Bd. of Fin. & Revenue*, 633 A.2d 1111, 1114 (Pa. 1993) ("due process 'requires at a minimum that the deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case.' . . . we note that procedural due process requires more than notice and hearing, but protects as well the right to an orderly proceeding adapted to the nature of the case.").

Instantly, the notice provided to Appellant regarding his lifetime registration and other SORNA requirements came nine years after he entered his guilty plea. At the time of his plea, Appellant was only on notice, based on existing law, that he would be subject to ten years of registration. Not only did Appellant not have notice that he would be subject to lifetime registration, he also had no notice that his registration requirement could be retroactively increased without any opportunity to contest that increase. Indeed, contrary to the provision in SORNA providing juveniles an opportunity to show that they should no longer be subject to lifetime registration, no such proviso exists for adults that successfully completed their sentence.

Although this Court has held, for purposes of the lawfulness of a guilty plea, that notice of registration is not required, this is wholly distinct from the question herein. Appellant had no opportunity to be heard and

potentially negotiate a guilty plea to a differing offense that would not have resulted in lifetime registration. Thus, the fact that lifetime registration is premised on his conviction is of little moment. Cases from other jurisdictions to the contrary are relying on *non-sequiturs* and legal sophistry. It is immaterial that the conviction is what results in lifetime registration when, at the time of the defendant's conviction, it did not. Had Appellant known that his conviction would have required lifetime registration he may have elected a different course through plea negotiations. This is why notice and an opportunity to be heard relate not to the time the new law was enacted, but to when the individual was deciding whether and to what crimes to plead guilty. Appellant had no notice at the relevant time that he would or could be required to register as a sex offender for life.

Certainly, the Commonwealth did not view Appellant as such a serious offender that he should have to register for life or it would not have agreed to a probationary sentence. What is more egregious and highly pertinent in this case is that Appellant is no longer serving any criminal sentence. This factor has been important in prior decisions from this Court. ***See Benner***, ***supra***. Mandating lifetime registration, retroactively, to a person no longer serving any sort of criminal sentence, while perhaps not criminal punishment under our federal *ex post facto* precedent, is no less odious than other *ex post facto* violations. Appellant's liberty and reputation will undoubtedly be curtailed by increased registration. ***Cf. In re J.B.***, ***supra***.

I repeat what the learned Professor Thomas Raeburn White so eloquently stated over a century ago: "Any law which relates to past events and alters the status of the parties with respect to them is unjust and unwise, and this has been universally recognized by the American people." Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 134 (1907). Retroactively requiring an individual no longer serving a criminal sentence to have to register as a sex offender for the remainder of his life, when he was initially subject to a ten-year registration period, deprives the individual of notice and an opportunity to be heard. Accordingly, it is unquestionable in my mind that Appellant's procedural due process rights under the Pennsylvania Constitution have been clearly and palpably violated. For the aforementioned reasons, I respectfully but adamantly register this dissent.