J-S09041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAWN MATTHEW BECHTEL | |
| Appellant | No. 1260 MDA 2015 |

Appeal from the Judgment of Sentence March 17, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000376-2014

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:　　　　　　　　**FILED FEBRUARY 02, 2016**

Shawn Bechtel files this timely direct appeal[1] from his aggregate sentence of 3-10 years' imprisonment for statutory sexual assault, aggravated indecent assault, indecent assault and corruption of minors.[2]  We affirm.

Bechtel raises two issues in this appeal:

> 1. Whether there was insufficient evidence to support the jury's verdict as to statutory sexual assault as the Commonwealth failed to establish [Bechtel] did cause his penis to penetrate the genitals of [the victim, E.H.]?

---

[1] The trial court imposed sentence on March 17, 2015.  On March 26, 2015, Bechtel filed timely post-sentence motions.  On July 15, 2015, the court denied Bechtel's motions.  On July 22, 2015, Bechtel filed a timely notice of appeal.  Both Bechtel and the trial court complied with Pa.R.A.P. 1925.

[2] 18 Pa.C.S. §§ 3122.1(b), 3125(a)(8), 3126(a)(8) and 6301(a)(1)(i), respectively.

2. Whether the verdict was against the weight of the evidence as to the charges of statutory sexual assault and aggravated indecent assault where the victim was uncertain [Bechtel]'s penis penetrated her vagina and the victim had provided numerous inconsistent accounts regarding [Bechtel] placing his fingers inside of her vagina?

Brief For Appellant, at 4.

When examining a challenge to the sufficiency of evidence, the standard we apply is

whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011).

The following evidence was adduced during trial:

[T]he victim, E.H., explained that [Bechtel] was her stepfather. She testified that her date of birth was July 7, 1999, and that she had never been married. At the time of trial, she was in tenth grade and was living with her aunt in Manheim. E.H. explained that she had been living with [Bechtel], her mother, and her two younger half-brothers at the family's home … in Palmyra when the incidents underlying these charges occurred.

E.H. had been having digestive issues when she was thirteen and fourteen years old for which her doctor had prescribed stool softeners. Around that time, [Bechtel] began to examine her naked buttocks for the purported purpose of ensuring her cleanliness. After this occurred a few times, E.H. told her mother. After E.H.'s mother spoke to [Bechtel], he stopped checking her for a period of time.

Around the beginning of the 2014 school year, [Bechtel] began to check E.H. again. On numerous occasions, he instructed E.H. to go into her parents' bedroom, take off her pants and underwear and bend over the bed so that he could see whether her buttocks were clean. He would then have her lay on the edge of the bed and spread her legs so that he could check to see that her pubic area and legs were clean-shaven. He would run his hands over her skin and insert his finger into her vagina. He also touched her breasts on top of her skin. [Bechtel] engaged in this conduct only when E.H.'s mother was out of the home working. [Bechtel] told E.H. not to tell anyone. During this time period, [Bechtel] also took numerous pictures of E.H. posing in various positions in various stages of undress, some when she was completely nude.

On January 1, 2014, E.H.'s mother was at work. One of E.H.'s brothers was napping and the other was playing video games in another room. [Bechtel] instructed E.H. to go into her parents' bedroom. He had her take off her pants, underwear and shirt and bend over the bed. Afterward, he had her lay face-up on the bed. He touched her vagina and inserted his finger into her vagina. [Bechtel] then laid down beside E.H. He was wearing elastic-waist pajama shorts. E.H. explained that she 'ended up on top of him' front-wise and that [Bechtel] had her put her head over his shoulder. (N.T. at 8) He then pulled down his shorts[3] and went to stick his penis inside her. [Bechtel] was grinding his penis on her vaginal area. She then 'felt like a little bit of like the tip of his penis go inside of me.' (N.T. at 12) She noted that this lasted only a short time and that she did not actually see [Bechtel]'s penis. She thought that [Bechtel] had ejaculated because she felt wetness around his shorts. At that

_____

[3] E.H. felt [Bechtel's] shorts go down her legs.

point, the doorbell rang. [Bechtel] got up and left. E.H. got dressed and went into the living room where [Bechtel] was with her two brothers and her grandparents. Prior to this incident, E.H. had confided episodes of [Bechtel]'s previous 'inspections' to a friend during Christmas break. When school reopened on January 2, 2014, her friend reported this information to the school guidance counselor. When questioned by the school nurse, Marjorie Ober, E.H. finally related this information to her.

On cross-examination, E.H. acknowledged that she had been experiencing problems with hygiene and that her mother had discussed the subject with her. [Bechtel] also began to discuss grooming of her vaginal area with her. Upon questioning by defense counsel, she stated that she was not certain whether or not [Bechtel]'s penis actually went into her vagina, and that he 'may have put' his penis into her vagina. She admitted that she had not actually seen [Bechtel]'s penis or the wet spot on his shorts. She explained that she could feel that [Bechtel]'s shorts were wet when he pulled them up before he left to answer the door.

The Commonwealth also presented the testimony of Marjorie Ober, Detective Matt Brindley, and Dr. Paula George (the medical director of the Children's Resource Center of Clinical Health in Harrisburg). These witnesses testified as to the accounts of [Bechtel]'s conduct which [were] given to them by E.H.

Detective Brindley recounted that he had met with E.H. on January 2, 2014. In describing the January 1, 2014 incident, E.H. had stated that [Bechtel]'s penis went inside her vagina a little bit, that it had hurt her, and that she felt wet. She also told Detective Brindley about the photographs. After meeting with E.H., he had gone to the family home and retrieved an SD camera card from which he obtained thirty-seven (37) pictures of E.H. (Exhibit 34) Detective Brindley also described an interview he had conducted with [Bechtel] on January 7, 2014. During that interview, [Bechtel] admitted that he had been checking E.H., but insisted that he was doing so due to her hygienic problems. He initially denied taking the pictures, but then admitted that he had taken them after he was informed that they had been recovered. With regard to January 1, 2014, he admitted that he had E.H. get naked, had rubbed her breasts and that they had ended up in his bed. He insisted, however,

that he only touched the top of her vagina and that he had remained clothed. He admitted that he had kissed E.H. on the neck and that he was aroused, had an erection, and had some pre-ejaculate from his penis. He further insisted that when E.H. asked him to stop, he did so immediately. He claimed that he never penetrated E.H.'s vagina with either his fingers or his penis. [Bechtel] stated to Detective Brindley that he was sorry for his actions and that he had let his family down.

At trial, E.H.'s mother also testified. She indicated that E.H.'s date of birth was July 17, 1999 and identified her as the person in the pictures which were developed from the SD card from their home. She testified that she had never asked [Bechtel] to check E.H.'s buttocks or vaginal area to make sure that she was clean and shaven.

The defense presented the testimony of Evelyn Lopez, a child protective caseworker with Lebanon County Children and Youth Services. Lopez had interviewed E.H. along with Detective Brindley on January 2, 2014. She was also present to observe an interview with E.H. at the Children's Resource Center on January 3, 2014. Lopez indicated that E.H. had reported that [Bechtel] and placed his finger(s) inside of her vagina and that he 'may have put his penis inside of her.' (N.T. at 131) Lopez recalled that E.H. stated that 'she felt as though his penis went into her vagina.' (N.T. at 133) Lopez's report also indicated that E.H. had told her that [Bechtel] had placed his hands down her pants and massaged her vaginal area.

[Bechtel] also testified at the jury trial. [Bechtel] indicated that he was thirty-five years of age at the time of trial and that E.H. was his stepdaughter. He explained that beginning in seventh grade, E.H. had begun experiencing digestive problems for which the doctor had prescribed a stool softener. Due to E.H.'s problems with proper hygiene, her school had notified [Bechtel] and his wife that she sometimes had an odor and would be sent home from school in the future if the problem continued. [Bechtel] and his wife addressed the hygiene issue with E.H. and they began to make sure that she cleaned herself properly and shaved her armpits and legs. He insisted that he and his wife checked E.H. on a regular basis and that he would only inspect her on his own if he detected an odor while his wife was at work. He insisted that he never touched her during these checks.

[Bechtel] admitted that he had taken pictures of E.H. but insisted that prior to January 1, 2014, he had never had physical contact with her. He explained that on that date, he had E.H. go into his bedroom and she took off her pants and underwear. He claimed that previously, he only had her pull her pants down but that she removed them of her own accord on that day because her pants were too tight. He admitted that he asked her to take off her top. He kissed E.H. on the neck and she sat on the edge of the bed. He motioned her to slide back on the bed and he then laid down beside her. He admitted that he touched and moved his hand around her breasts, and then ran his hand down her stomach to her vaginal area. He claimed that he had moved his hands around on her breasts, but not on her genitals. He further admitted that he was aroused and had an erection. At that point, E.H. asked him to stop and he did so. As she went to get off the bed, she straddled him and then sat down on his crotch. It was painful when E.H. sat down on him and he lost his erection. He claimed that he pulled her down on him because of the pain. He also claimed that E.H. leaned over to hug him and her body shifted his pants down. He insisted that his penis never became exposed from inside his shorts. He further insisted that he did not penetrate E.H.'s vagina with his finger or his penis.

Trial Court Opinion, at 2-8.

An individual is guilty of statutory sexual assault, graded as a first degree felony, if he "engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S. § 3122.1 (b). The act of sexual intercourse requires only "some penetration, however slight." 18 Pa.C.S. § 3101. Penetration need not reach the vagina or farther reaches of female genitalia. *In Re A.D.*, 771 A.2d 45, 49 (Pa.Super.2001). Penetration of the labia is sufficient. *Commonwealth v. Hunzer*, 868 A.2d 498, 506 (Pa.Super.2005). The

uncorroborated testimony of a sexual assault victim, if believed, can itself form the basis for a guilty verdict. ***Commonwealth v. McDonough***, 96 A.3d 1067, 1069 (Pa.Super.2014).

The evidence establishes that at the time of the incident, E.H. was 14 years old, and Bechtel was either 34 or 35 years old. Thus, Bechtel was more than eleven years older than E.H. E.H. and Bechtel were not married to each other. E.H. testified that on January 1, 2014, Bechtel inserted his penis into her vagina: "I felt like a little bit of like the tip of his penis go inside of me." N.T., 10/8/14, at 12. This evidence was sufficient to establish the crime of statutory sexual assault beyond a reasonable doubt.

Bechtel argues that there was insufficient evidence of statutory sexual assault due to contradictions in E.H.'s testimony. The trial court analyzed this issue as follows:

> Viewing all the evidence presented at trial, we find that there was ample testimony upon which the jury could have based a determination that [Bechtel] did, in fact, penetrate E.H.'s vagina with some portion of his penis. When viewed in its entirety, the trial excerpt cited by [Bechtel] indicates that she did not actually disavow her prior testimony on this matter. On redirect, E.H. testified as follows:
>
> Q: Now, ... you said you weren't certain whether or not his penis went inside of your vaginal area so let's talk about that day on January 1st of 2014. You had previously told us ... that you were on top of him and that you had your head over his one shoulder. What were you able to feel?
> A: I was able to feel just my skin on his penis and his penis on my vagina.
> Q: How was he moving it around?
> A: He was moving up and down like a grinding motion.

…

Q: Now, you would agree with me that your vaginal area, there's some entryway that you would use to go to the bathroom, am I correct?
A: Yes.
Q: Did any part of his penis touch that area?
A: I don't think so.
Q: When he was grinding or moving his penis around, was that on your vaginal area or was that some other part of your body?
A: It was on my vaginal area.

(N.T. at 50-51)

We do not view this testimony as a contradiction of E.H.'s assertion that the tip of [Bechtel]'s penis penetrated her vagina when it is considered in the context of the entire questioning. On cross-examination, when E.H. was asked whether she was certain that her stepfather's penis actually went into her vagina, she did respond 'no.' (N.T. at 41) However, the word 'into' was not defined for E.H. and she was not questioned as to her interpretation of that term. It is certainly possible that she assumed she was being asked whether his penis went all the way inside of her vagina. For sexual intercourse to occur, all that is necessary is a penetration of the victim's genitals; penetration of the labia is sufficient … She had already testified that she felt like it only went in a little and also that she felt [Bechtel] moving his penis 'up and down like a grinding motion' on her vagina. (N.T. at 50) …

[Moreover, Bechtel] had previously stuck his finger in [E.H.'s] vagina on numerous occasions and [E.H.] would have been able to tell that this time felt different.

Trial Court Opinion, at 12-14, 17. We agree with the trial court that the minor inconsistencies in E.H.'s testimony do not render the evidence of statutory sexual assault insufficient.

In his second argument on appeal, Bechtel argues that the verdicts on the charges of statutory sexual assault and aggravated indecent assault

were against the weight of the evidence, because E.H. was uncertain that Bechtel's penis penetrated her vagina, and E.H. had provided numerous inconsistent accounts regarding Bechtel placing his fingers inside of her vagina. We disagree.

The law pertaining to weight of the evidence claims is well-settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa.Super.2015) (citations omitted).

We concluded above that any minor discrepancies in E.H.'s testimony did not render the evidence of statutory sexual assault insufficient as a matter of law. Similarly, any discrepancies in her testimony do not demonstrate that the evidence should have shocked the trial court's conscience. As the trial court reasoned:

> E.H.'s credibility was within the province of the jury and any possible conflict in her testimony was for their resolution. This

was a young girl who had been subject to inappropriate conduct on the part of her stepfather for an extended period of time. She was participating in interviews and physical examinations which were being conducted by numerous unfamiliar individuals who were conducting an official investigation of a sensitive issue. Her uncertainties were reasonable for someone of her age, experience and maturity level. Although she may have been confused due to her age and sexual inexperience, she was able to describe in detail what she felt with her vagina when she was on top of [Bechtel]. She testified that [Bechtel] had previously inserted his finger in her vagina on prior occasions and that, instead, this felt like his penis. She could also determine that what she felt was [Bechtel]'s penis by the position of their bodies.

Trial Court Opinion, at 13. The trial court properly exercised its discretion in denying Bechtel's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2016