J-S44039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES EDWARD BROOKS | |
| Appellant | No. 365 WDA 2015 |

Appeal from the Judgment of Sentence February 17, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000386-2014

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 09, 2018**

Charles Edward Brooks' appeal is before us pursuant to the Pennsylvania Supreme Court's order of January 3, 2018, which vacated our October 22, 2015 disposition and remanded for reconsideration in light of its decision in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017).  After a consideration of **Muniz**, we affirm in part and vacate and remand in part.

On February 4, 2015, a jury convicted Brooks of eight counts of sexual offenses against a female victim, and one count of corruption of minors (sexual nature) against a male victim.[1]  The female victim testified that the

---

[1] Brooks was convicted of the following offenses (all but count 8 were against the female victim):

sexual offenses against her occurred over a period of approximately five years, from 2002 to 2007, when she was between the ages of five and ten. The offense against the male victim occurred prior to the spring of 2013.[2]

President Judge John F. Wagner sentenced Brooks on February 17, 2015, to a total term of imprisonment of six to twelve years. Brooks was classified as a Tier III offender under the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10–9799.41, and ordered to undergo lifetime registration with the Pennsylvania State Police as a sexual

_____

Count 1 – Involuntary Deviate Sexual Intercourse, 18 Pa.C.S. § 3123(a).

Count 2 – Involuntary Deviate Sexual Intercourse (victim under age 13), 18 Pa.C.S. § 3123(b).

Count 3 – Aggravated Indecent Assault-Child, 18 Pa.C.S. § 3125(b).

Count 4 – Aggravated Indecent Assault, 18 Pa.C.S. § 3125.

Count 5 - Endangering Welfare of Children, 18 Pa.C.S. § 4304(b).

Count 6 – Corruption of Minors (sexual nature), 18 Pa.C.S. § 6301(a)(1).

Count 7 – Indecent Assault (victim under age 13), 18 Pa.C.S. § 3126(a)(7).

Count 8 – Corruption of Minors (sexual nature), 18 Pa.C.S. § 6301(a)(1).

Count 9 – Indecent Assault – 18 Pa.C.S. § 3126(a).

[2] The male victim was eight years old at the time of trial in February 2015. The report to the Pennsylvania State Police was made in May 2013. The male victim's testimony was unclear on the specific year Brooks showed him pornographic pictures.

offender.[3]  Brooks appealed, challenging the constitutionality of the lifetime

registration requirement and the sufficiency of the evidence supporting his

convictions, as follows:

1. Is it unconstitutional to require an appellant to register for a lifetime when said registration requirement exceeds the statutory maximum penalty for appellant's offense?

2. Is the Adam Walsh statute unconstitutional in requiring an appellant to register for a lifetime?

3. The Commonwealth failed to prove beyond a reasonable doubt appellant had any inappropriate contact with the victim in the present case;

4. The Commonwealth failed to prove beyond a reasonable doubt that appellant engaged in any activity tending to corrupt the minor victim by showing him inappropriate magazines or photos;

5. Did the Commonwealth fail to prove beyond a reasonable doubt that the appellant had any unlawful contact with the minor victim since there was no physical evidence presented in the instant case?

Appellant's Brief, at 7 (renumbered for ease of discussion).  Because the

***Muniz*** decision renders SORNA an unconstitutional *ex post facto* law as

applied to Brooks, we need not address his specific claims in issues one and

two.

---

[3] Under SORNA, persons convicted of involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123, aggravated indecent assault, 18 Pa.C.S. § 3125, or indecent assault of a person less than thirteen years of age, 18 Pa.C.S. § 3126(a)(7), are categorized as Tier III offenders and are required to register as sex offenders for the remainder of their lives.  ***See*** 42 Pa.C.S. §§ 9799.14(d)(4), (d)(7), and (d)(8), 9799.15(a)(3).

In **Muniz**, the defendant was convicted in 2007 of two counts of indecent assault.  He was scheduled for sentencing later that year, "at which time he would have been ordered to register as a sex offender with the Pennsylvania State Police for a period of ten years pursuant to then-effective Megan's Law III."  **Muniz**, 164 A.3d at 1192 (citing 42 Pa.C.S. § 9795.1 (expired)).  Before he could be sentenced, however, Muniz absconded; it was not until 2014 that he was apprehended and later sentenced.  **Id.**  At his sentencing in 2014, Muniz was ordered to comply with the lifetime registration provisions under the then-enacted SORNA, which had replaced Megan's Law III in his absence.[4]  Muniz filed post-sentence motions, seeking application of the ten-year registration period under Megan's Law III, which was the law at the time he committed his offenses and was convicted, instead of lifetime registration under SORNA.  The trial court denied that motion and, on appeal

_____

[4] On December 20, 2011, the legislature replaced Megan's Law III with SORNA, effective December 20, 2012, to strengthen registration requirements for sex offenders and to bring Pennsylvania into compliance with the Adam Walsh Child Protection and Safety Act, 42 U.S.C.A. § 16901, *et seq*. **Commonwealth v. Sampolski**, 89 A.3d 1287, 1288 (Pa. Super. 2014). Section 9799.14 of SORNA establishes a three-tiered system of specifically enumerated offenses requiring registration for sexual offenders for differing lengths of time. **Id**. Pursuant to section 9799.15(a)(1), a person convicted of a Tier I offense must register for 15 years.  A Tier II offender must register for 25 years, while a Tier III offender must register for the remainder of his or her life.  42 Pa.C.S. § 9799.15(a)(2), (a)(3). **See supra**, note 3.   A sexually violent predator (SVP) requires lifetime registration. **See** 42 Pa.C.S. §§ 9799.14, 9799.15(d). **See also** 42 Pa.C.S. § 9799.15(a)(6) ("A sexually violent predator shall register for the life of the individual.").

to this Court, Muniz argued, *inter alia*, that retroactive application of SORNA violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. This Court affirmed Muniz's judgment of sentence. ***Commonwealth v. Muniz***, No. 2169 MDA 2014 (unpublished memorandum, Pa. Super. filed August 7, 2015).

On appeal, our Supreme Court reversed this Court's decision and vacated the portion of the sentence requiring Muniz to comply with SORNA. Five of the six participating justices held that SORNA's enhanced registration provisions constitute punishment, notwithstanding the General Assembly's identification of the provisions as nonpunitive,[5] ***Muniz***, 64 A.3d at 1218, and further, determined that retroactive application of SORNA's registration provisions violates the *ex post facto* clause of the Pennsylvania Constitution.[6]

---

[5] ***See*** Declaration of Policy, 42 Pa.C.S. § 9799.11(b)(2) ("It is the policy of the Commonwealth to require the exchange of relevant information about sexual offenders among public agencies and officials and to authorize the release of necessary and relevant information about sexual offenders to members of the general public as a means of assuring public protection and shall not be construed as punitive."). ***See also*** Legislative Findings, 42 Pa.C.S. § 9799.11(a)(2) ("This Commonwealth's laws regarding registration of sexual offenders need to be strengthened. The Adam Walsh Child Protection and Safety Act of 2006 provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens of this Commonwealth.").

[6] Article I, Section 17 of the Pennsylvania Constitution provides: "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const., art. I, § 17. The ***Muniz*** Court noted that Muniz's seven-year absence from the Commonwealth did not affect its decision; had Muniz been sentenced

- 5 -

***Id.*** at 1218-19.   Thus, the binding precedent arising out of ***Muniz*** is limited to the finding that SORNA's registration requirements violate the Ex Post Facto Clause of the Pennsylvania Constitution.[7] ***See Commonwealth v. Hart***, 174 A.3d 660, 666 n. 9 (Pa. Super. 2017).[8]

We reconsider this case in light of ***Muniz*** mindful of the following:

Critical to relief under the *ex post facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Based on these concerns, [in ***Calder v. Bull***, 3 U.S. 386 (1798),] Chief Justice Chase set out four categories of laws that violate such prohibitions:

---

in 2007 and subject to registration under Megan's Law III, pursuant to section 9799.13 of SORNA, his ten-year registration period would have converted to a lifetime registration period when SORNA became effective. ***Muniz***, 64 A.3d at 1193 n.3.

[7] Although a plurality Opinion Announcing the Judgment of the Court ("OAJC") has no precedential value, "where a concurring opinion enumerates the portions of the plurality's opinion in which the author joins or disagrees, those portions of agreement gain precedential value." ***Commonwealth v. Brown***, 23 A.3d 544, 556 (Pa. Super. 2011).  In ***Muniz***, the OAJC found that SORNA violates the *ex post facto* clauses under both the Pennsylvania and United States Constitutions.  Justice Wecht's Concurring Opinion, joined by Justice Todd, found that SORNA violates the Pennsylvania Constitution and declined to consider whether SORNA violates the United States Constitution.

[8] Additionally, since the ***Muniz*** Court determined the registration requirements were punitive, this Court later held that a portion of SORNA's framework for designating a convicted defendant an SVP, 42 Pa.C.S. § 9799.24(e)(3), was unconstitutional. ***See Commonwealth v. Butler***, 173 A.3d 1212, 1218 (Pa. Super. 2017) (holding section 9799.24(e)(3) of SORNA unconstitutional as it "specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP.").

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. **Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed**. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.
>
> Furthermore, two critical elements must be met for a criminal or penal law to be deemed *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.  As such, [o]nly those laws which disadvantage a defendant and fall within a **Calder** category are *ex post facto* laws and constitutionally infirm. The *ex post facto* clauses of the United States and Pennsylvania Constitutions are implicated here because a holding rendering the effects of SORNA's registration requirements punitive would place the statute into the third Calder category: application of the statute would inflict greater punishment on appellant than the law in effect at the time he committed his crimes.

*Muniz*, 164 A.3d at 1195–96 (quotation marks, unnecessary capitalization, and some citations omitted) (emphasis added). "The **Muniz** Court held that Pennsylvania's SORNA is an unconstitutional *ex post facto* law when applied retroactively to those sexual offenders convicted of applicable crimes before the act's effective[] date and subjected to increased registration requirements under SORNA after its passage*." **Commonwealth v. McCullough**, 174 A.3d 1094, 1095 (Pa. Super. 2017); **Commonwealth v. Hart**, *supra*.

As in **Muniz**, the Ex Post Facto Clause of the Pennsylvania Constitution is implicated here because application of SORNA's registration requirements would inflict greater punishment on Brooks than the law in effect at the time

he committed his crimes. **Muniz**, **supra**. "Critical to relief under the *ex post facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." **Muniz**, 164 A.3d at 1195. SORNA became effective on December 20, 2012, prior to Brooks' conviction and sentencing, but *after* he committed the instant offenses. SORNA enhanced registration requirements for Tier III offenses, including quarterly in-person reporting and dissemination of personal information via an Internet website. **Muniz**, 164 A.3d at 1210-11, (citing **Commonwealth v. Perez**, 97 A.3d 747, 765 (Pa. Super. 2014) (Donohue, J. concurring)). These additional, more stringent registration requirements constitute a greater punishment than what would have been imposed under the law in effect at the time the crimes were committed, in particular, Megan's Law II, and Megan's Law III. As such, retroactive application of these enhanced registration requirements runs afoul of constitutional *ex post facto* prohibitions. **See Muniz**, 164 A.3d at 1193, 1216

Because Brooks committed his crimes at a time when registration and reporting requirements for individuals who committed his offenses were less onerous, and thus the punishment was less, SORNA cannot be applied retroactively to Brooks without violating the Ex Post Facto Clause of the Pennsylvania Constitution. **See Muniz**, 164 A.3d at 1192-93. Thus, we are constrained to conclude that Brooks is not required to register under SORNA.

Our reconsideration in light of **Muniz** does not alter our prior disposition of Brooks' three claims raising sufficiency of the evidence challenges. Based on our review of the parties' briefs, the relevant case law and the certified record on appeal, we dispose of Brooks' first three claims based on President Judge Wagner's opinion. We attach a copy of that decision in the event of further proceedings in the matter. With respect to his final two claims, challenging the constitutionality of the registration requirements, we remand in accordance with **Muniz**.[9]

We vacate that portion of Brooks' sentence requiring him to comply with SORNA. The remainder of his judgment of sentence is affirmed. Jurisdiction relinquished.

Judge Jenkins did not participate in the consideration or decision of this case.

_____

[9] We note that this case presents the anomalous situation where the laws in effect at the time of Brooks' offenses, Megan's Law II (Act of May 10, 2000, P.L. 74, No. 18, as amended, 42 Pa.C.S. §§ 9791–9799.9, (repealed and replaced)) and Megan's Law III (Act of May 10, 2000, P.L. 74, No. 18 (formerly codified at 42 Pa.C.S.A. §§ 9791–99.9)), have been repealed and replaced, in the case of Megan's Law II, or expired on December 20, 2012 and replaced by SORNA, **see** 42 Pa.C.S.A. § 9799.41, and the current law (SORNA) is unconstitutional as applied to Brooks. We also note that the offense against the male victim, corruption of minors-sexual nature, 18 Pa.C.S. § 6301(a)(1), is a Tier I offense, 42 Pa.C.S. 9799.14(b)(8), requiring registration for a period of fifteen years. 42 Pa.C.S. § 9799.15(a)(1). Although this would not be an unconstitutional application of SORNA, we do not find the evidence that this offense in fact occurred on or after the effective date of SORNA was established beyond a reasonable doubt. The male victim's testimony as to timing is vague at best, and it establishes only that the offense occurred sometime prior to the spring of 2013.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/9/2018

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :

              vs.                  :

CHARLES BROOKS             :  No.  386 of 2014

       Defendant            :

## OPINION AND ORDER

WAGNER, P.J.

Before the Court is Defendant's Concise Statement of Issues on Appeal listing five grounds on which he is seeking relief: (1) Insufficient evidence that he had any inappropriate contact with the victim; (2) Insufficient evidence that he showed the victim inappropriate magazines or photos; (3) Insufficient evidence that Defendant had any unlawful contact with the victim; (4) Unconstitutionality of the requirement for lifetime registration for a defendant such as he; and (5) Unconstitutionality of the Adam Walsh statute which requires lifetime registration.

The Defendant has been convicted by a jury of the following nine offenses: Involuntary Deviate Sexual Intercourse, IDSI forcible compulsion; Involuntary Deviate Sexual Intercourse with a person less than thirteen years of age; Aggravated Indecent Assault forcible compulsion; Aggravated Indecent Assault with a person less than thirteen years of age; Endangering the Welfare of Children; Corruption of Minors; Indecent Assault with a person less than thirteen years of age; Corruption of Minors, magazines, two victims; Indecent Assault forcible compulsion contact. The trial evidence may be summarized as follows:

1

The first witness, Cl.  . C,  . ., eighteen years old at the time of the trial, testified that she knew Defendant as "Chuckie" most of her life because he was Ms. C  's stepgrandmother's son, and he resided with his mother. N.T. pp. 6-7. When Ms. C  was between the ages of five and ten years old, her stepgrandmother, V  Bi  ., was her caretaker while her mother, father, or stepfather were working. Id. p. 8. While the child was at her stepgrandmother's house, Defendant would take her up to his bedroom and showed her pornographic magazines with naked men and women engaging in sexual intercourse. Id. p.9. Sometimes Defendant would then remove her clothing and touch the young girl's chest and vagina with his fingers. Id. pp. 10-11. The touching later progressed to "dry humping" her while her clothes were on. Id. Such activity brought Defendant's penis into contact with the victim's pelvic area. Id. p. 15. Eventually, Defendant once forced her head down on his penis after he had removed the child's clothing. Id. Some years later, when she was sixteen years old, she finally told her stepmother's niece about the sexual abuse, Id. p. 13, and later told her stepmother after her stepmother asked about it. Id. p. 21.

Ms. C  's halfbrother, C  Bi  age eight years and in the third grade, told the jury that he knows Defendant as "Uncle Chuckie." Id. pp. 31, 37. C  stated that Defendant would show him magazines with pictures of naked women sometimes when he went to his grandmother's house. Id. p. 38. Although C  's grandmother was in the house, he and Defendant would go to a different part away from where she was. Id. C  first told his mother about the pictures. Id. p. 40. Pennsylvania State Trooper Thomas Hartley testified that during his investigation of this matter, he had ascertained that Defendant's date of birth is August 19, 1956; C  iC  's birthdate is January  , 1997, and C  Bi  's date of birth is July  , 2006, Id. p.15, and had also determined that the crimes occurred at 130 Palmer Adah

2

Road, Luzerne Township, Fayette County. Id. Commonwealth witness, Desiree Patterson, a forensic interviewer at A Child's Place at Mercy, 1515 Locust Street, Pittsburgh, testified concerning her interviews with both C:    C:    and C    B    Id. p. 61. Ms. Pattersons's testimony generally confirmed that of both victims in that Ms. C.    related to her that Defendant had shown her pornographic pictures, digitally penetrated her vagina, and forced her to perform oral sex on him one time, Id. pp. 68-72, while C    told her that Defendant had shown him pictures of naked women. Id. pp. 62-63.

In evaluating a challenge to the sufficiency of the evidence, the Court must consider the trial evidence in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences based on that evidence. Commonwealth v. Walker, 839 A.2d 999 (Pa.Super. 2003). Clearly, the trial testimony as summarized above is quite sufficient to refute Defendant's first three claims of insufficiency for purposes of this appeal.

As to Defendant's two claims concerning the unconstitutionality of the length of the sex offender registration requirements and the "Adam Walsh" statute which mandates the said registration, the Sexual Offender Registration and Nortification Act (SORNA), such provisions are non-punitive and are intended to advance and protect public safety. See Commonwealth v. McDonough, 96 A.3d 1067 (Pa.Super. 2014). The registration period of twenty-five years does not constitute an illegal sentence, but is rather a collateral consequence of his convictions. See Id. The constitutionality of any statute is purely a question of law, and a declaration that a properly enacted legislative statute is not constitutional is generally beyond the authority of the Court of Common Pleas. However, it is well-settled that when a statute imposes a consequence on a defendant for reasons other than punishment, it is considered as non-penal and not within the purview of the Eighth Amendment of the United States Constitution. See Trop v. Dulles, 356

U.S. 86 (1958). As already stated, McDonough, *supra.*, held that SORNA's goal is the non-punative effectuation of public safety. Thus, it is not punishment for the purposes of the Eighth Amendment or under Article 1, Section 13 of the Pennsylvania Constitution, and does not violate the prohibitions against cruel and unusual punishment in either.

For the foregoing reasons, it is respectfully suggested that Defendant's appeal should be denied.

BY THE COURT:

_____, P.J.

ATTEST:

_____
Clerk of Courts

4